### DUNSCOMB v. CHICAGO, B. & Q. R. CO.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1917.)

No. 2370.

1. JUDGMENT ⬠692—CONCLUSIVENESS—PERSONS CONCLUDED.

Plaintiff's father, a resident of Ontario, died prior to plaintiff's birth, leaving a will, whereby he devised and bequeathed to his widow, plaintiff's mother, for life the income from all his real and personal estate, remainder over to any child or children of the marriage. The will appointed a resident of the city of Philadelphia trustee, authorizing him to collect and receive and pay over the income of the trust property. A portion of the trust property was in shares of the capital stock of defendant railroad company. After the widow's remarriage, the trustee with her consent disposed of such shares of stock and died shortly thereafter, having misapplied the trust property, only a small portion of which was recovered. A copy of the will and codicil had been lodged with the defendant's transfer agent. After the trustee's death, suit was instituted in Ontario against his administrator for the appointment of a new trustee. Complainant, the infant child of testator, being made a party defendant, appeared by guardian ad litem. An order was entered appointing a trust company as trustee to collect, and shortly thereafter on petition of the guardian ad litem, as well as the trustee, an action was instituted in the state courts of New York to impeach the transfer by the original trustee of the capital stock of defendant railroad company. Judgment in such litigation was finally rendered for defendant and its transfer agent who was joined in that action. *Held*, that as complainant was the only person ultimately interested, and as the New York litigation was had on the petition of his guardian ad litem, the guardian ad litem subsequently participating therein, the judgment is binding on complainant, though he was not a party.

2. EQUITY ⬠72(1)—SUITS—LACHES.

In such case, where complainant was 22 years of age when the New York litigation was finally terminated adversely to him, and he waited nearly 11 years before filing a bill against defendant, and such bill was dismissed 8 years thereafter for want of prosecution, a bill filed nearly a year thereafter by complainant comes too late and will be dismissed on account of laches; it appearing that a trust settlement was made between complainant and his mother on his petition about 13 years before the filing of the last bill, and that the complainant during all the interim had not been under any disability, this being particularly true as any right of defendant against its transfer agent who was the only one at fault had been long since lost by limitations.

---

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by George Hoyles Dunscomb against the Chicago, Burlington & Quincy Railroad Company. From a decree dismissing the bill, complainant appeals. Affirmed.

The material facts appear by stipulation. June 14, 1870, George Hoyles Dunscomb of the Province of Ontario, Canada, married Harriet C. Gore. Appellant, born May 31, 1871, is the only issue of the marriage. The father died March 21, 1871, leaving a will dated December 14, 1870, in which he bequeathed to his wife 100 shares of stock in appellee, an Illinois corporation, and other stocks and bonds, and making bequests of cash and chattels to various other persons, with residuary bequest of his property to the children of a brother, and appointing his wife and the brother as executors. There was a codicil of same date as the will, as follows:

"In the event of my having issue by my wife, Harriet Catherine Dunscomb, I give, devise and bequeath to my said wife, for the term of her natural life, the income from all the real and personal estate that I may die possessed of, and on her death I give and bequeath said real and personal estate to the child or children of our marriage now living, or who may be living at the time of my death, or born after my death, to be divided equally among them share and share alike.

"The real and personal estate to be realized by my trustee either at public or private sale, whichever may in the discretion of the said trustee be deemed best for the interest of my estate, at the death of my wife and divided among the issue of my marriage as above directed.

"And I do appoint Charles H. Muirheid, of the city of Philadelphia, in the state of Pennsylvania, in the United States of America as trustee under this my will to collect and receive and pay over the income of the trust estate, therein comprised, to my wife if she survives me, during her life, and at her death to dispose the said real and personal estate as above directed.

"And I bequeath to the said Charles H. Muirheid for his services as trustee the usual commission."

The will and codicil were duly probated in and according to the law of Ontario, and the wife was appointed sole executrix; the brother declining to act.

Among the assets of the estate were 261 shares of stock in appellee railroad company. The stock certificates therefor were assigned and surrendered by the executrix, and in pursuance were duly transferred by the National Bank of Commerce of New York, the transfer agent of the railroad company, to "Charles H. Muirheid, trustee for Harriet C. Dunscomb under the will of George H. Dunscomb," and new certificates of stock issued by the bank to Muirheid in his stated capacity; a copy of the will and codicil having been lodged with the transfer agent bank as evidence of the right of the executrix to assign the stock. While Muirheid so held the stock, the railroad company declared two stock dividends amounting on this stock to 13 and 21 shares, for which certificates were issued to Muirheid as such trustee. The market value of the stock fluctuated greatly between 1872 and 1877, at one time being as high as 143, the lowest point being 78. The trend was generally downward.

The widow married one Hunt, and they went for a time to England to reside. July 3, 1877, after correspondence between her and Muirheid, which showed a desire and consent on her part to have the railroad stock sold and its proceeds invested by Muirheid in more stable security, a sale was made at the then market price, of slightly below par, and the proceeds invested by the trustee in interest-bearing mortgages on Philadelphia real estate, which were considered good, and for about five years thereafter the interest on the mortgages was paid to Mrs. Hunt. The transfer agent accepted surrender, and canceled the certificates of this stock so standing in the name of the trustee, and issued new certificates to his vendees. The record shows that thereafter and down to 1900 the market value of the stock continued to fluctuate, going as high as

149⅛ and as low as 53½. Subsequently Muirheid used the mortgages, as well as other property belonging to the trust estate, for his own purposes. In 1883, Muirheid died leaving his estate wholly insolvent, and but a small part of the trust estate so misapplied was ever recovered.

In 1883, Mrs. Hunt, then residing in Ontario, brought suit there in chancery against Muirheid's administrator, Sharp, for the appointment of a new trustee for her deceased husband's estate; her then infant son being made a party defendant. The infant appeared by duly appointed guardian ad litem, and an order was entered appointing the Toronto General Trusts Company, a Canadian corporation, as trustee to collect. Shortly thereafter, on petition of the guardian ad litem, as well as of the trusts company, the court appointed the trusts company as trustee generally, and authorized the sale of certain railroad and other bonds which were yet remaining in the trust estate, and the investment of the proceeds in real estate mortgages. It appears that the securities which came so into the new trustee's hands, and were sold under such order, and the proceeds invested pursuant thereto, realized $12,750.19.

In the same proceeding, upon petition of the trust company and the guardian ad litem, the chancellor, on June 30, 1883, caused entry to be made upon his minute book that in his opinion suit should be taken by the infant, in the proper court, to impeach the transfer by trustee Muirheid of the railroad stock, and to take advice on prospect of success of such suit. It was stated in the entry that this would involve the expense of a visit of the guardian ad litem to the United States, which expense shall be borne by the trust estate.

Pursuant to the advice obtained and to such direction of the Chancery Court of Ontario, the trusts company as trustee of the estate of Dunscomb, deceased, brought suit July 6, 1883, in the Supreme Court of New York against the railroad company (appellee here) and the National Bank of Commerce of New York, to compel restoration of the railroad stock so sold by trustee Muirheid, and transferred by the bank, and an accounting for the dividends which had theretofore been declared on the stock, and, if it was impossible to restore or transfer the stock, then to compel payment of its value to the trustee. It appears that the guardian of the infant was also a general officer of the trusts company, and that prior to the institution of this suit an agreement in writing was entered into, whereby the guardian and Mrs. Hunt agreed, with certain attorneys who would undertake the suit, that these attorneys should be paid for their services therein a stipulated percentage of all that would be recovered in the suit or by compromise. It appears further that during the pendency of that suit there were negotiations for its settlement, and that on June 14, 1887, upon application of the trusts company and the guardian ad litem made to the Chancery Court in Ontario, in the said trusteeship there still pending, a certain proposed compromise of the New York suit was authorized by the Ontario court, although the compromise was in fact never effected. Answers to the New York suit were filed by the defendants therein, and on November 17, 1887, the suit was dismissed on the ground that the trusts company had not the legal capacity to sue in New York. Upon appeal to the General Term the judgment was affirmed, but was reversed by the Court of Appeals, and a new trial granted. T. G. T. Co. v. C. B. & Q. R. R. Co., 123 N. Y. 37, 25 N. E. 198.

Upon retrial the Special Term rendered judgment in favor of the railroad company and against the National Bank of Commerce. Upon appeal to the General Term the judgment was affirmed as to the railroad company and reversed as to the bank, that court holding that the trustee Muirheid had the right to sell the railroad stock in question. On appeal by the trusts company to the New York Court of Appeals, the judgment of the General Term was on June 20, 1893, affirmed.

On June 19, 1899, Mrs. Hunt and her son, appellant, who was then aged 28, filed petition in the High Court of Justice of Ontario for the discharge of the trusts company as trustee of the estate, and for direction to the trustee to transfer to the petitioners all property of the trust estate. On the hearing of the petition that court on June 21, 1899, found that the accounts of the trustee had been passed and are satisfactory to the petitioners, who are the only parties interested in the trust estate, and ordered that the trustee "do forth-

with transfer and assign the estate of the said George Hoyles Dunscomb as aforesaid to the petitioners and that thereupon the said the Toronto General Trusts Corporation be and they are hereby discharged of and from the said trust and from all accountability and liability in respect of the said estate."

On March 11, 1904, appellant exhibited in the circuit court of Cook county, Ill., his bill in chancery against appellee, setting forth the facts concerning said railroad stock substantially as herein stated, and asking relief similar to that sought in the New York action, and as here demanded. The suit was dismissed for want of prosecution December 11, 1912. Eight months afterwards the bill in this cause, similar in its scope to the others referred to, was filed, federal jurisdiction being invoked through diversity of citizenship, the plaintiff, although living at Chicago, being a citizen of Canada. Mrs. Hunt, the mother, was living when this suit was instituted. Upon hearing the District Court dismissed the bill for want of equity, and plaintiff appeals.

E. B. Wilkinson and M. F. Gallager, both of Chicago, Ill., for appellant.

J. A. Connell, of Chicago, Ill., for appellee.

Before ALSCHULER and EVANS, Circuit Judges, and CARPENTER, District Judge.

ALSCHULER, Circuit Judge (after stating the facts as above). Three questions are in the main presented: (1) Does liability attach to appellee by reason of the action of the National Bank of Commerce of New York, its transfer agent, in accepting trustee Muirheid's cancellation and surrender of the stock certificates, and issuing new ones to Muirheid's transferees, involving primarily the question of the right of Muirheid as trustee to dispose of the stock? (2) Is appellant bound by the outcome of the litigation in the New York courts in the suit brought there by the Toronto General Trusts Company against appellee and the National Bank of Commerce? (3) Is appellant's right of action, if any he had, barred by his laches?

In view of the conclusion we have reached respecting the second and third propositions, discussion of the first will be quite unessential to the disposition of the appeal. We have, however, carefully considered that proposition, and its elaborate presentation by counsel, and are impressed with the apparent rectitude of the conclusion reached and disposition made of that issue by the New York General Term, arising, as the question did there, on appeal from a judgment of the Special Term holding the bank liable, but dismissing the railroad company. The General Term, in a somewhat extended opinion, reversing the Special Term, concluded that Muirheid, trustee, had full power to sell the stock, and that the bank properly accepted the surrender and made the transfer by issue of the new certificates to the purchaser. Toronto General Trusts Co. v. Chicago, Burlington & Quincy R. Co. and National Bank of Commerce, 64 Hun, 1, 18 N. Y. Supp. 593, affirmed by the Court of Appeals on the appeal of the trustee. Toronto General Trusts Co., as Trustee, v. Chicago, Burlington & Quincy R. R. Co., 138 N. Y. 657, 34 N. E. 514, and Toronto General Trusts Co. v. National Bank of Commerce, 138 N. Y. 657, 34 N. E. 514.

[1] Respecting the proposition that the determination in the New York suit is binding here on appellant, it is contended for him that the

trustee bringing that action was not a trustee for appellant, that appellant was not a party to that litigation, and is therefore in no way bound by it. Without going into the much mooted question of whether or not appellant was in law a cestui que trust under the codicil, we do not think that the particular facts here warrant so restricted a view of appellant's relation to the New York litigation as to give dominance to his precise relation to the trust as created. While the New York suit was nominally brought by the trustee, it is plain that it was brought on the behest of, and for the benefit of, appellant, and no one else. His mother as executrix had made absolute assignment of the stock to Muirheid as trustee, thereby investing him with the full legal title thereto (if indeed under the will he did not without such assignment have the legal title), and in her individual capacity she had requested and consented to Muirheid's sale and transfer of the stock, and reinvestment of the proceeds, and was in no position to complain of that transaction. The only person who then was beneficially interested in any controversy concerning the transfer of the stock was appellant. For him a guardian ad litem was duly appointed in a proper proceeding in the Canadian court, and it was on his petition that the new trustee was appointed, first with power only to collect, and on further petition of appellant by his guardian ad litem, with full powers as trustee. And it was on petition of appellant by his guardian ad litem that the Canadian court authorized an investigation at the expense of the trust estate, into the advisability of bringing suit in New York to recover the transferred stock or its value. And before the suit was brought appellant's guardian ad litem joined in an agreement with counsel respecting the amount and payment of the lawyers' fees for the prosecution of the New York suit; and appellant's knowledge of and participation in the conduct of that suit appears further from the action of the Ontario court, on appellant's petition through his guardian ad litem, some years after the New York suit was begun, authorizing compromise of that action on certain proposed terms. The High Court of Justice of Ontario had full jurisdiction over the rights of appellant, and appellant, by his duly appointed guardian ad litem, in proceeding with the suit in New York in the name of the trustee, was not less a party in interest there because the trustee only appeared as complainant, and the infant was not named as a party. That suit having been instituted by appellant acting by his guardian ad litem, in the name of the trustee, upon the theory that the trustee, if anybody, was lawfully entitled to the possession of the stock for the use and benefit of appellant, and therefore to maintain the suit, and defended as it was with ultimate success upon the ground that the first trustee, having lawful possession and title to the stock, had the right to dispose of it, we are not impressed with the contention that its determination is binding only upon the trustee, and not upon appellant, at whose instance, on whose behalf, and for whose sole benefit it was brought, and under whose direction it was maintained. We are of the opinion that, under the state of facts here appearing, the decision in the New York suit is so far binding on appellant that he cannot be permitted here to maintain the very same kind of action which in the New York suit was thus determined adversely to his interest. Thompson v. Maxwell Land

Grant Co., 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539; Green v. Bogue, 158 U. S. 478, 15 Sup. Ct. 975, 39 L. Ed. 1061; Plumb v. Goodnow's Admr., 123 U. S. 560, 8 Sup. Ct. 216, 31 L. Ed. 268; Richter v. Jerome, 123 U. S. 233, 8 Sup. Ct. 106, 31 L. Ed. 132; Corcoran v. Canal Co., 94 U. S. 741, 24 L. Ed. 190; James v. Germania Iron Co., 107 Fed. 597, 46 C. C. A. 476 (8 C. C. A.).

[2] Regarding the issue of laches, it appears that, on the date of the affirmance by the New York Court of Appeals of the decision of the General Term, appellant was 22 years of age. Presumably he then knew that his mother had barred herself from ever questioning the sale of the stock by Muirheid, and that in any event, as to her, the outcome of the New York litigation was final, and that, if any right of action remained by reason of the transfer of the stock, appellant alone was its beneficiary; and yet upwards of 20 years further elapsed before the beginning of this suit. It appears that in the meantime a suit was begun by appellant in the state court at Chicago, but nearly 11 years had passed at the time of its commencement, and it was finally dismissed for want of prosecution after pending for a number of years. It is insisted—and authorities in support are cited—that, while appellant might have brought the suit, the right of action was primarily in the trustee, and that appellant's failure to bring the suit would not be laches on his part, nor in any manner impair his right to bring it pending or on the termination of the trust. But notwithstanding the fact that his mother is still living, it appears that the trust was absolutely terminated by the proceedings of June, 1899, by the court in which it was pending, and which had appointed the Trusts Company as trustee. This termination of the trust was upon the petition of appellant, who was then 28 years of age, and of his mother. The order of the Ontario court terminated the trust, discharged the trustee, and recited, as was stated in appellant's petition for the order, that the trustee had conveyed to appellant and his mother all the trust property—including presumably any and all rights of action for the benefit of the trust estate which the trustee then had. Thenceforth it was in himself alone, and not longer in a trustee, that any right of action inhered; and yet since such termination of the trust more than 15 years passed by before this suit was commenced. The record does not disclose that appellant was laboring under any disability during all those years; indeed, the presumption of his intellectual equipment in at least ordinary degree is heightened by the record fact that he is assistant cashier in one of Chicago's largest banks. The alleged wrong, out of which the asserted right of action arose being primarily the wrong of appellee's agent the bank, if recovery were had against appellee, ordinarily it could have recourse for its loss against the agent who caused it. But any right of appellee against the bank is long ago barred by limitation, whereby, through appellant's unreasonable delay before beginning the suit, appellee would now be unable to impose the ultimate loss upon its responsible agent. We find present all those elements essential to sustain the defense of laches as a bar to appellant's asserted cause of action. Johnston v. Standard Mining Co., 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480; Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Venner v. Trust Co., 204 Fed. 779, 123 C. C. A. 591 (2 C. C. A.); Continental Nat. Bank v. Heilman

et al., 86 Fed. 514, 30 C. C. A. 232 (7 C. C. A.); Spoor v. Wells, 3 Barb. Ch. (N. Y.) 199; Jackson's Admnr. v. King's Admnr., 12 Grat. (Va.) 499.

The decree of the District Court is affirmed.