## FULSOM et al. v. QUAKER OIL & GAS CO. et al.

Circuit Court of Appeals, Eighth Circuit.
September 30, 1929.

No. 8438.

Lewis C. Lawson, of Holdenville, Okl., for appellants.

George S. Ramsey, of Tulsa, Okl. (Arlington C. Harvey, of Chicago, Ill., Alvin Richards, Edgar A. de Meules, Villard Martin and Garrett Logan, all of Tulsa, Okl., and J. E. Thrift, of Sapulpa, Okl., on the brief), for appellees.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

LEWIS, Circuit Judge. This suit was brought by three full-blood Creek Indians, Fannie Fulsom, Mollie Tiger and Babie Cumsey, appellants here, and at all times residents of Creek County, Oklahoma, to cancel their deed executed August 12, 1909, conveying 160 acres of land in said county to F. S. Lozier. Lozier's grantees and their lessees, who claim an interest, are defendants.

From the bill it appears that plaintiffs were all enrolled as members of the Creek Tribe of Indians pursuant to Acts of March 1, 1901 (31 Stat. 861), and June 30, 1902 (32 Stat. 500); that Fannie Fulsom signed the deed to Lozier by her mark, as Ah-la-co-hon-ny Fulsom. Babie Cumsey signed as Babie Barnett, and Mollie Crow Tiger as Mollie Tiger. The two latter, who are daughters of the former, could and did write their names, the mother could not. None of them could understand or converse in any language except that of the Euchee band of Creeks. Fannie Fulsom had another daughter, Sina Crow, and the land here in controversy was selected as her allotment out of Creek tribal lands in 1905, and deed or patent therefor approved by the Secretary of the Interior was issued in her name, all in keeping with the acts of Congress to carry out the agreement with the Muskogee or Creek Tribe. Sina Crow had died in August, 1899, unmarried, leaving an infant child who died a month later. Plaintiffs claim they took the whole title by inheritance, that is not disputed, and we so held in Roubedeaux v. Quaker Oil & Gas Co., 23 F.(2d) 277.

The bill further alleges that a determination of the plaintiffs' rights and title to the land requires consideration of several acts of Congress, the Act of April 26, 1906 (34 Stat. 137), and the Act of May 27, 1908 (35 Stat. 312), particularly sections 5, 19 and 22 of the earlier act and section 9 of the later act; that some time prior to the said Act of

May 27, 1908, F. S. Lozier sought to purchase the entire allotment from Fannie Fulsom as the sole and only heir, and she undertook to convey the same to Lozier in consideration of $800; that her deed was sent to the Department of the Interior to be approved, as required by the Act of April 26, 1906, that the same was returned to Lozier with the refusal of the Department to approve it for want of sufficient consideration, and that deed was never approved as required by that act; that Lozier kept the deed until August 12, 1909, on which date he brought the deed to Sapulpa, county seat of Creek county, to have it approved by the county court of said county, and then and there attempted to obtain another deed for the same land for the same consideration from Fannie Fulsom, Mollie Tiger and Babie Cumsey, for the purpose of carrying out and consummating his prior contract and agreement with Fannie Fulsom in the procurement of the first deed, which was in violation of the proviso contained in section 19 of the Act of April 26, 1906; that on said August 12 Lozier seems to have procured an instrument in writing purporting to be a quit-claim deed for said lands. The bill then sets out the deed which is sought to be cancelled. It is alleged that Fannie Fulsom did not sign her name to the deed, or make her mark as and for her signature, but that this was done by another, that Mollie Tiger and Babie Cumsey did sign their names but were induced to do so on the representation that they had no interest in the land, which they believed; that they each, however, received $10 from Lozier at the time; that the deed and the petition to the county court of Creek County for its approval were prepared by James J. Mars and delivered to the court to be by the court delivered to Lozier when the deed should be approved; that at the same time Lozier delivered to the county court his check for $770 as the unpaid consideration for the land, he having theretofore paid each of the plaintiffs $10; that the $770 was paid by the court to Fannie Fulsom on the approval of the deed on October 6, 1909; that the plaintiffs did not know or understand the nature or character of either the deed or the petition for its approval, or its purpose, and Mollie Tiger and Babie Cumsey did not know that it was intended as a conveyance of their interest in the land but supposed they were signing simply as witnesses to the name of their mother; that the matter of approving said deed came on for hearing before the said county court on the 5th and 6th of October, at which time the plaintiffs

and Lozier were present and plaintiffs were examined as witnesses and their testimony taken down and filed in the proceedings. A transcript of their testimony is attached to the bill as an exhibit and as a part thereof. The bill then sets forth the order of the county court approving the deed. The order found that Fannie Fulsom was entitled to the land and estate of her deceased daughter Sina Crow under the laws of descent and distribution of the Creek Nation, and that the consideration for the deed should be turned over to her. Because of this error (the laws of Arkansas controlled descent) it is alleged that the approval order was wholly void. It appears from the bill that at a later date, to-wit: November 5, 1914, the county court entered another order for the purpose of correcting the error. That order was entered on the petition of Mollie Tiger and Babie Cumsey. It is alleged that this order was void, that neither Mollie Tiger nor Babie Cumsey had any knowledge of the purpose of the petition, that when they signed it John Tiger (husband of Mollie) represented to them that it was an oil and gas lease and thereby their signatures were obtained by fraud and deceit. Other reasons are stated to support the claim that that proceeding, and the order then made therein approving the deed, were void. It is alleged that the $770 deposited with the court by Lozier as the balance of the consideration for the deed, the total being $800, was turned over by the court to Fannie Fulsom on October 6, 1909, and that said deed was placed of record, that Lozier then took possession of the land and on October 29, 1912, gave an oil and gas lease on said land to one Robertson. That lease was later assigned to the Quaker Oil & Gas Company. The conveyances, deeds and leases to the other defendants, under the title claimed by Lozier, are stated in the bill. The bill goes on in more detail with allegations as to the ignorance of plaintiffs of their rights, overreaching and misrepresentations by Lozier and non-compliance with and violation of the Acts of Congress in obtaining the deed and the approval of the transaction by the probate court.

The exhibits attached to the bill and made a part of it are:

1. The quit-claim deed to Lozier of August 12, 1909, bearing the signatures of plaintiffs as grantors, Fannie Fulsom's having this between the two words Al-ah-co-honny and Fulsom, "(her x mark)," and immediately below the three names of the grantors this: "Signed in the presence of James J. Mars, H. M. Ausmus." Below this

is the acknowledgment of the execution of the deed by all of the grantors before a notary public, and below the acknowledgment is this: "Approved October 6, 1909, Josiah G. Davis, Judge (County Court Seal)," and below that a certificate of the register of deeds of Creek county that the deed was filed for record October 25, 1909.

2. Petition of the three grantors, plaintiffs here, as the sole and only heirs at law of Sina Crow, deceased, asking the county court of Creek county to approve the deed made by them as such heirs on condition that the consideration for said deed of $800 equals the appraisement of the land to be made in accordance with the rules of the court. The petition describes the land, states that Sina Crow died intestate leaving surviving her as her sole and only heir her daughter, Susie Crow, and that Susie Crow was also deceased. The petition also set forth in hæc verba section 9 of the Act of May 27, 1908, which in part, including the first proviso, reads thus:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

The remainder of the section seems immaterial here. The petition disclosed that the lands in controversy had been allotted to Sina Crow. This petition was signed by Mollie Tiger and Fannie Fulsom in the same way that they signed the deed. It was not signed by Babie Barnett, known also as Babie Cumsey. To it is attached the affidavit of these two grantors made before the notary public who took their acknowledgment to the deed, and in which they state on oath that they have heard the petition read through an interpreter and that the facts therein stated are true. To this petition was attached three receipts, one given by each of the grantors for $10 as having been paid to them as part payment for the Sina Crow land.

3, 4, 5. These exhibits are transcripts of the testimony of each of the three grantors given in the county court in the matter of the application for the approval of the deed to Lozier. They testified through an interpreter, Nellie B. Helton, who appears to have been their personal friend. The answers of each to the questions asked them are direct and show an intelligent understanding. Fannie Fulsom stated the facts in reference to the death of her daughter Sina and her granddaughter Susie. She stated that the consideration for the deed was $800 and that she received $10 when she signed it. The court through the interpreter advised her that if there was anything else she wished to know it would be explained to her, and she answered that she understood it. The testimony of the two daughters was confirmatory of that of their mother.

6. This is a copy of the record order of the county court signed by Josiah G. Davis, County Judge, approving the deed to Lozier. It set out the facts in the transaction and states that the approval is according to section 9 of the Act of May 27, 1908.

To this bill the defendants plead res adjudicata: That these same plaintiffs, in March, 1920, entered into a written contract with Lewis C. Lawson whereby, in their own names, they employed him as their attorney and counsel to commence an action in the proper court having jurisdiction to recover on their behalf as plaintiffs the Sina Crow allotment, the land involved in this case, and damages for the detention and occupation of said land and the value of the oil and gas removed therefrom by these defendants, which contract was approved by the county court of Creek county on April 18, 1923; that at the time this contract was made, both Mollie Tiger and Babie Cumsey were under guardianship, guardian having been appointed for each of them on the ground that they were unable to read, write, speak or understand the English language and had no conception of the value of property or the management of property; that both Mollie Tiger and Babie Cumsey appealed from said orders and both orders were reversed by the Supreme Court of the state and the guardians discharged; that in April, 1922, a petition was filed in the county court of Creek county, alleging that Fannie Fulsom was a citizen of that county and unable to read or understand the English language and was incompetent and illiterate and incompetent to transact business of importance and it was requested that a guardian for her person and estate be appointed, and that court appointed C. L. Garber such guardian, and Garber entered into a written contract with Lewis C. Lawson on December 29, 1922, employing him to represent him as guardian of Fannie Fulsom in the prosecution of an action then pending in the district court of Creek county. That contract was approved by the county court. Thereafter in December, 1925, on petition, an order was entered

in that court discharging the guardian of Fannie Fulsom and restoring her to competency; that on March 16, 1926, the Creek county court, on petition, made an order restoring Mollie Tiger to competency and discharged her guardian, and on the same date a like order was made as to Babie Cumsey. In August, 1920, plaintiffs Mollie Tiger and Babie Cumsey, by C. L. Garber as their next friend, and Fannie Fulsom, through their attorney Lewis C. Lawson, commenced an action in the district court for Creek county against these defendants and others for the same matter and demand as the cause of action set up in this case in this court, that is, to cancel and set aside the deed which the plaintiffs executed on August 12, 1909, conveying the Sina Crow allotment to F. S. Lozier, for an accounting for the oil and gas extracted and removed by the defendants, and for damages for use and occupation of the land. It is alleged that plaintiffs filed an amended petition on May 7, 1923, in the action which they began in the district court of Creek county in August, 1920. That amended petition is attached to the answer pleading res adjudicata in this case as an exhibit. The said amended petition in the district court is by reference made a part of defendants' answer here. It is further alleged that the defendants to the action in the state district court answered said amended petition, and those answers are attached to the plea of res adjudicata and made part thereof, so that the pleadings in the state court and all exhibits therewith are brought into the record here, including an appraisement of the Sina Crow allotment by three appraisers appointed by said county court who made report on October 4, 1909, that the value of the allotment was $800, and including also the petition of Mollie Tiger and Babie Barnett for the approval of the sale to Lozier, filed in said county court November 5, 1914, and the order of approval of said county court thereon made November 5, 1914. The said case in the state district court came on for trial on April 8, 1924, without a jury, trial was had, testimony offered and admitted, and on May 3, 1924, that court, after making written findings of fact and conclusions of law, entered judgment that plaintiffs take nothing in their said cause and that their case be dismissed at their cost. The said findings and conclusions of law of said court are also brought into the record by the pleadings in this case. Among said findings made by the state district court are these: That the deed to Lozier was not obtained by fraud of any kind or character and that each of the parties plaintiff here (who were grantors in said deed) received in fact one-third of the consideration paid by Lozier, that they were each vested by inheritance with an undivided third interest in the allotment under applicable statutes of Arkansas, and that the deed to Lozier was properly approved by the county court of Creek county as the deed of all three parties on October 6, 1909, and was also approved as the deed of Mollie Tiger and Babie Cumsey by said court on November 5, 1914. The state district court further found that the plaintiffs executed the deed to Lozier in the presence of each other and in the presence of two witnesses, to-wit: James J. Mars and H. W. Ausmus, and acknowledged the same before a notary public; that before they executed it it was read over to them by Mars in the presence of John Tiger, husband of Mollie Tiger, who interpreted the deed to plaintiffs; that John Tiger could speak both English and Euchee; that plaintiffs understood that the deed was executed subject to approval by the county court, and the payment of the consideration, $800, was conditional upon the approval, and they presented their petition to the county court to have the deed approved; that before acting on said petition the county court appointed three appraisers to view and appraise the Sina Crow allotment, that they visited and viewed said allotment and appraised it at the sum of $800 as its fair value; that on October 6, 1909, the day that the county court turned over to Fannie Fulsom the remainder of the consideration, $770, she paid over one-third of the money to Mollie Tiger and one-third to Babie Cumsey; that Fannie Fulsom cannot write her name nor read, speak or understand the English language or the Creek language, but speaks and understands the Euchee language; that Mollie Tiger can write her own name, read and speak a little English and understands sufficient English to buy groceries and carry on ordinary trade in stores; that Babie Cumsey can write her own name but does not speak or understand much or any English; that all of them speak and understand Euchee; that John Tiger spoke and understood English and Euchee; that when the deed was before the county court for approval Nellie B. Helton acted as interpreter and interpreted the testimony of the plaintiffs into English and read over and interpreted the deed to Lozier to the plaintiffs while they were in court and fully advised them as to the contents of the deed and its effect. It was further found that the petition of Mollie Tiger and Babie Barnett filed

November 5, 1914, was fully explained to them before that order of approval was entered; that neither Fannie Fulsom, Mollie Tiger nor Babie Cumsey was at any time a person of unsound mind or mentally incompetent, that neither of them was under any disability except the disability imposed by the Acts of Congress prohibiting them from alienating inherited lands without approval of a Federal agency; that Fannie Fulsom and Mollie Tiger have more intelligence and capacity than the average full-blood Indian citizen of the Five Civilized Tribes, and Babie Cumsey possesses intelligence equal to that possessed by the average full-blood Indian of those Tribes, and they were competent to manage their own allotments and inherited lands, and convey and deed them under the safeguards provided by section 9 of the Act of May 27, 1908.

It is further alleged in the answer pleading res adjudicata that after said judgment of the district court of Creek county these plaintiffs appealed therefrom to the Supreme Court of the state, that said cause was heard in that court on appeal and the judgment below affirmed. See 124 Okl. 260, 256 P. 727. And so defendants aver that these plaintiffs have set up here the same cause of action that they brought in their original and amended petitions in Tiger, et al., plaintiffs, v. Lozier, et al., defendants, in the district court of Creek county, Oklahoma, and that the judgment of said district court, and of the Supreme Court of Oklahoma affirming it, is conclusive upon the plaintiffs, not only as to all matters actually litigated and determined in that action but also as to all matters germane to the issues which could or might have been litigated and availed of by them in said former suit, and they plead the said former suit, proceedings and adjudication therein in bar of the present bill of complaint. They asked judgment sustaining their plea of res adjudicata and an injunction restraining plaintiffs and their counsel, Lewis C. Lawson, from instituting any further action or suit in any court to cancel the said deed to F. S. Lozier or to recover the said land. It is further alleged that the Supreme Court of the United States (275 U. S. 496, 48 S. Ct. 117, 72 L. Ed. 392) denied a writ of certiorari to the Supreme Court of Oklahoma in said cause.

An examination and comparison of the amended petition filed by these plaintiffs in their suit in the state district court with the bill of complaint in this court convinces us that they state one and the same cause of action. The same relief is sought in both, to-wit, cancellation of the deed of August 12, 1909, to Lozier, on the ground that it was voidable because procured from plaintiffs by fraud in fact, and on the further ground that it is void because it was procured not in accordance with but in violation of acts of Congress. As ancillary thereto they sought in both cases to hold the defendants to an accounting for the value of oil, gas and other minerals that have been taken from the land, and in both they asked the court to appoint a receiver of the property pending the litigation. In both they asked that the approval orders of the county court of Creek county of October 6, 1909, and November 5, 1914, be also cancelled and set aside as clouds upon the title of plaintiffs and that subsequent conveyances and leases held under Lozier or his grantees be also cancelled and annulled. It is said that the amended petition in the state court did not allege that the deed to Lozier was void because it was executed pursuant to a contract made before the passage of the Act of May 27, 1908, and the said contract and the deed executed pursuant thereto were in violation of section 19 of the Act of April 26, 1906, whereas the bill here makes that specific allegation. But that proposition was squarely presented to the state district court on the plaintiffs' motion in that court for a new trial; nor was it alleged in the state court suit that the deed was not the deed of Fannie Fulsom because she had not made her own mark thereto and the witness who signed her name to said deed did not himself sign as a witness to the mark, as required by the Oklahoma statute. But it is a settled rule that a litigant cannot escape estoppel by judgment on the claim that he omitted or withheld in his first action some of the grounds or reasons on which he might have supported the cause of action therein stated, and thereafter litigate the same cause of action on the claim that those grounds or reasons were not set forth in his first suit, but were pleaded in the last. Nye v. Prairie Oil & Gas Co., 105 Okl. 104, 238 P. 962; Miller v. Belvy Oil Co. (C. C. A.) 248 F. 83; Sapulpa Petroleum Co. v. McCray (C. C. A.) 4 F.(2d) 645; Hickey v. Johnson (C. C. A.) 9 F.(2d) 498.

Furthermore, the testimony on the trial of this case does not convince us, and did not convince the court below, that the deed of August 12, 1909, to Lozier, was made pursuant to a contract entered into prior to the passage of the act of May 27, 1908, and by reason thereof was void under that clause of section 19 of the Act of April 26, 1906,

which reads: "And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void."

■ It is argued by counsel for appellants that because they are full-blood Indians they are not bound by the judgment of the state district court; that, in fact, the judgment of no court binds them if it denies to them any right secured to them by act of Congress, and therefore they are entitled to have their case considered on its merits, notwithstanding the same issues may have been decided against them in any number of suits that they may have previously brought. This proposition seems to assume that the deed to Lozier was void, although made within the permissible term of section 9 of the Act of May 27, 1908. No authority is cited to sustain this broad contention. The testimony of all the plaintiffs given in this case, and their testimony in the county court of Creek county given in October, 1909, shows they are not non compos mentis but intelligent Creeks. The bill alleges that plaintiffs were all enrolled as members of the Creek Tribe of Indians under acts of Congress that entitled them to allotments of tribal lands in severalty, which the record shows they received. By other acts they have been made citizens of the United States. Under the Constitution of Oklahoma (article 2, § 6) the district court of that state was open to them for redress of every wrong and injury to their person or their property. They availed themselves of the privilege when they submitted themselves and their cause to the jurisdiction of that court and sought an adjudication of the wrongs there and here complained of. And we think they are bound as any other litigant would be bound. There are many cases, in both federal and state courts, in which Indians of no higher status than these plaintiffs have sought and at times obtained protection of property rights. Felix v. Patrick (C. C.) 36 F. 457, affirmed in Felix v. Patrick, 145 U. S. 317, 12 S. Ct. 862, 36 L. Ed. 719; Y-ta-tah-wah v. Rebock (C. C.) 105 F. 257; Schrimpscher v. Stockton, 183 U. S. 290, 296, 22 S. Ct. 107, 46 L. Ed. 203; McDougal v. Black Panther Oil & Gas Co. (C. C. A.) 273 F. 113; Brown v. Anderson, 61 Okl. 136, 160 P. 724; Blackbody v. Maupin, 38 S. D. 621, 162 N. W. 393; Wa-la-note-tke-tynin v. Carter, 6 Idaho, 85, 53 P. 106; Deere v. State of New York (D. C.) 22 F.(2d) 851; Tiger v. Western Investment Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738; Harjo v. Empire Gas & Fuel Co.

(C. C. A.) 28 F.(2d) 596; Larkin v. Paugh, 276 U. S. 431, 48 S. Ct. 366, 72 L. Ed. 640; United States v. Candelaria, 271 U. S. 432, 46 S. Ct. 561, 70 L. Ed. 1023.

■ Counsel for appellants calls attention to the fact that it appears from the amended petition in the state court that Fannie Fulsom appeared there as plaintiff by her guardian and Mollie Tiger and Babie Cumsey appeared by their next friend, whereas in this suit each appears as plaintiff in her own proper person; and on that account, it is said, they are not bound by the judgment in the state court. But the guardian and next friend were not parties to that litigation, they had no personal interest in it. They were only agents, recognized by the court, for the purpose of aiding in the prosecution for the real plaintiffs. The former suit was wholly in behalf of the plaintiffs here, as much so as is this suit. The Oklahoma Compiled Statutes 1921, § 1454, required that Fannie Fulsom's guardian appear and represent her "in all legal suits and proceedings, unless another person is appointed for that purpose as guardian or next friend." In Williams v. Ritchey, 3 Dill. 406, Fed. Cas. No. 17,734, Judge Dillon said:

"If the prochein amy is to be considered as the party, or even a party, to the suit, the objection to the jurisdiction of the court would be well taken. But he is not a party. The complainant is the infant in whose name and on whose behalf the bill is exhibited by her next friend. Infants are capable of maintaining suits to assert their rights, but the practice in chancery requires that the suit of an infant should be supported by another person technically known as the next friend of the infant. The object of this requirement is that the court may have the guaranty of a responsible person that the suit is one proper to be brought and that it is brought in good faith with the sanction of a friend of the infant who is willing to assure this by assuming a liability to the defendant for costs if the suit should prove unsuccessful. But this does not make the prochein amy in a legal sense the party or a party to the suit. The suit is, nevertheless, the suit of the infant. * * * The next friend may be any person willing to act, even one it seems who has been outlawed, and he is subject to removal by the court for cause, and is at all times under its control. 1 Daniell, Ch. Prac. 92, et seq."

To the same effect see Webb v. Harris, 32 Okl. 491, 121 P. 1082, Ann. Cas. 1914A, 602. Judgments against those under disability, although not represented, are not

void where they are made defendants and brought in by regular process; and if they are plaintiffs they may sue by guardian or next friend. It has been held "that a minor who has commenced and prosecuted an action to judgment is bound by the result. And as a general rule infant plaintiffs are as much bound by a decree as persons of full age." 1 Black on Judgments, §§ 193, 197, 198, 205. One in whose interest a suit is prosecuted with his consent is bound, though he may not be a party of record in the cause. "Although one is not nominally or formally a party to an action, he will be concluded by the judgment therein if he was represented, as to his rights or interests in the subject matter, by a party legally entitled to represent him, or who actually conducted the prosecution or defense on the behalf and for the benefit of such person." 34 C. J. p. 999; Sparks v. Gallagher, 114 Okl. 103, 243 P. 228. In Dunscomb v. C. B. & Q. R. Co. (C. C. A.) 246 F. 394, the Seventh Circuit denied the plaintiff's right to relitigate issues that had been adjudicated in former suits in which he was represented by a guardian ad litem. ■ There were some who were parties defendant in the first suit who are not parties in this case. Lozier was a party there but not here. But there need not be "a complete identity as to all the parties in both proceedings. All that is necessary either to an estoppel or bar is that the persons between whom the judgment is to operate as res adjudicata should be the same." 1 Freeman on Judgments (5th Ed.) § 417.

Reverting again to the proposition that plaintiffs did not specifically allege in the first suit that the deed to Lozier was void under the Act of April 26, 1906, because made pursuant to a contract entered into prior to the Act of May 27, 1908, we observe this in Freeman, § 681: "There is an obvious distinction between grounds of action and causes of action; a single cause of action may be based upon several grounds, in which event, whether actually litigated or not, they are all merged in the judgment which bars a new action on the same cause of action on a different ground." Also in Northern Pacific Ry. Co. v. Slaght, 205 U. S. 122, 27 S. Ct. 442, 445, 51 L. Ed. 738, the court, after observing that there is a distinction between personal and real actions quotes this from Herman on Estoppel:

"Although there may be several different claims for the same thing, there can be only one right of property in it; therefore, when a cause of action has resulted in favor of the defendant, when the plaintiff claims the property of a certain thing there can be no other action maintained against the same party for the same property, for that would be to renew the question already decided; for the single question in litigation was whether the property belonged to the plaintiff or not; and it is of no importance that the plaintiff failed to set up all his rights upon which his cause of action could have been maintained; it is sufficient that it might have been litigated."

We think the defendants' plea was good, and the court did not err in sustaining it.

Affirmed.