## LOGAN, HYDE PARK & SMITHFIELD CANAL CO. et. al. v. LOGAN CITY.

No. 4556. Decided June 4, 1928. Rehearing Denied August 28, 1928. (269 P. 776.)

222

*Leon Fonnesbeck,* of Logan, and *B. J. Stewart,* of Salt Lake City, for appellants..

*Story & Crow,* of Salt Lake City, *Le Roy B. Young,* of Ogden, and *Clark, Richards & Bowen,* of Salt Lake City, for respondents.

CHERRY, J.

This is an appeal by Logan City, etc., from a decree confirming the several titles of the plaintiffs and the cross-defendant, Utah Power & Light Company, to the use of certain waters of Logan river, in Cache county, and enjoining the defendants Logan City and its officers from interfering with or disturbing the exercise of such rights by fluctuating or causing a variation in the natural flow of the water of the river.

The plaintiffs and the cross-defendant, whose claims and interests herein are similar, are severally the owners of extensive rights to the use of the waters of Logan river for irrigation and power purposes. Eleven of the plaintiffs are mutual irrigation companies, who represent and distribute water for irrigation to numerous stockholders. Their rights are exercised by direct diversions of water at numerous

places from the river, and the waters thus diverted are thereafter subdivided and apportioned by means of canals, ditches, gates, measuring devices, etc., to and among the numerous persons by whom it is used. Their systems and methods of diversions and distribution are such that any frequent substantial variation or fluctuation of the flow of water in the river results in serious injury and damage to them, because such fluctuation disturbs and makes impractical the proper diversion and apportionment of the water between the plaintiffs themselves, and between the numerous persons to whom the water is distributed by them for use. Several of the plaintiffs and the cross-defendant have rights to divert and use water from the river for generating power. Their diverting works and plants are so situated that frequent fluctuations in the flow of water in the river very seriously interfere with and disturb them in the exercise of their rights.

The defendant Logan City owns and operates an electric power plant, situated on the river some distance upstream from the points of diversion of the plaintiffs and the cross-defendant. There the waters of the river are diverted and used by the city for generating power, and returned to the river above any point of diversion of the plaintiffs or the cross-defendant. There is and can be no objection on the part of plaintiffs and the cross-defendant to such use by the city, except so far as the manner of use materially impedes and varies the natural flow of the water in the river, and interferes with the exercise of the rights of the plaintiffs and cross-defendant. It was alleged and proved, and found by the court as a fact, that the city had installed and was using in its power plant a device called an automatic governor, the purpose and effect of which was to regulate the quantity of water passing through a pipe line to its works, and accommodate the same to correspond from time to time with the demands upon the plant for electrical power. The diverting works of the city consists of a dam across the river, above which the water is impounded. A

pipe line from the dam conducts the water to the city power plant. When the water impounded is high enough to overflow the dam, the variation in the quantity of water used by the city does not fluctuate the flow of water in the river below, because a lessening of the quantity taken through the pipe line would automatically increase to the same extent the quantity flowing over the dam and down the river.

There are times, however, especially during the irrigating season, when the water in the river does not overflow the city's dam. Then the whole volume of the river must flow through the city's pipe line and power plant, or be impounded above its dam. It is during such times that the grievances complained of occur. At such times the operation of the automatic governor at the city's plant results in a frequent and substantial impediment and fluctuation of the flow of water in the river, "varying in each 24 hours," as the court found, "from one cubic foot per second to fifteen cubic feet per second, and that said fluctuation occurs at irregular intervals, causing at times a diminution in the natural flow, and at other times an increase over the natural flow, of said stream at the respective points of diversion of the plaintiffs and cross-defendant."

The acts of the city in thus fluctuating the natural flow of the river were by the court held wrongful and materially injurious and prejudicial to the rights of the plaintiffs and the cross-defendant, and to prevent a continuance thereof an injunction was granted. The decree confirms certain rights of the plaintiffs and cross-defendant to the use of the waters of the river for irrigation and power purposes, and adjudges that whatever right the defendant Logan City has to impound, divert, and use the waters of Logan river for power purposes is subsequent, inferior, and subordinate to the rights of the several plaintiffs and the cross-defendant, and the city, its officers, agents, etc., are perpetually enjoined from so operating its diverting works and power plant as to impound, obstruct, or impede in any manner the free and natural flow of the waters of the river

to which the several plaintiffs and cross-defendant are entitled, respectively, at their several points of diversion.

At the trial the main subject of controversy was the superiority or priority of rights to the use of the waters of the river as between the opposing sides, each of whom asserted rights paramount to the other. Presumably this was upon the theory that, if Logan City had the prior and superior right to its use of the water for generating power, it could, in connection with the exercise of its right, fluctuate the natural flow of the waters of the river in the manner complained of, without legal consequence to the rights of those who diverted water at lower points on the stream. Whether or not a prior right to the use of water for the purposes mentioned would include the right to fluctuate the flow of water in the river to the extent complained of is a question which we need not and do not here decide. It is enough to say that a junior appropriator has no such right. The trial court found upon the evidence that the righs of the lower appropriators were prior and superior to the rights of the city. If that finding is correct, the city is precluded from asserting a right to fluctuate the flow of the river by reason of priority of right.

The principal contention of appellants is that the trial court erroneously decided this question. There was pleaded by the plaintiffs and cross-defendant, and introduced in evidence, the record of a former judgment and decree of the district court of Cache county, dated February 21, 1922, entered in an action in which the plaintiffs and the cross-defendant in the present action and Logan City were all parties. The pleadings in the action showed that the action was brought for the purpose of determining, confirming, and quieting the titles of the parties thereto to the use of the waters of Logan river. Logan City was a party defendant, and was required to set up any adverse claim it had to the rights asserted by the other parties to the action. It filed an answer, setting up and claiming a right to 10 second feet of water for culinary, domestic, and municipal

purposes, but failed to assert any right to the use of water for generating power, but stipulated to a decree whereby the rights of the plaintiffs and cross-defendant as now asserted and claimed, and its own right to 10 second feet of water above mentioned, were quieted and confirmed, and the respective parties to the action enjoined and restrained from interfering with each other in the diversion and use of the waters of the river as defined in the decree. The rights awarded by the decree to Logan City have no relevancy to the present controversy and may be dismissed from further consideration.

It is argued by appellants that the decree in the former action does not render the issue of priority of rights between the parties in the present action res adjudicata, because in the former action the specific right or claim of Logan City to the use of the water for power purposes was not alleged in the pleadings, nor mentioned, nor adjudicated in the decree, and that it was not within the contemplation of the parties to adjudicate the same. It is true that the rights of Logan City for power purposes were not alleged in the pleadings, nor mentioned in the decree. As to what the parties contemplated should be adjudicated, we may look no further than the pleadings, the findings, and the judgment in the action. The matter adjudicated in the prior action was the rights of parties to the use of the waters of Logan river. Specifically, for the purpose of the present argument, the subject-matter or issue in that action was the several rights of the plaintiffs and cross-defendant to the use of certain defined quantities of water for specified purposes, and those rights were quieted and confirmed. These are the things made res adjudicata by that decree. And the legal effect of the adjudication is to forever bar any of the other parties to the decree from asserting any adverse claim to such rights.

It is of no consequence whatever that the claims of Logan City for power purposes were not referred to in the pleadings or the judgment. The action itself was a challenge

to Logan City to assert any claim it had, of any nature or kind, which was adverse to or inconsistent with the rights claimed in the pleadings. And when none was asserted, and the plaintiffs' rights were established, the decree quieting and confirming the plaintiffs' rights as between the parties to the action naturally followed, and became a final adjudication that such rights are paramount and superior to any right or claim of the other parties to the decree. Such must be the legal effect of a decree quieting title to water rights, else an action to quiet such title would be a futile proceeding. The purposes of an action to determine rights to the use of water, and the legal principles by which it is controlled, are the same as in an action to determine title to real estate. The difference in the nature of the subject-matter, and the fact that two or more persons may have the legal right to use parts of the same water source, or even the identical water, need not confuse the legal aspect of the matter. The right to use a definite quantity of water of a particular source is just as specific a thing, in legal contemplation, as an estate in land, and the title to one is quieted in precisely the same manner as the other.

In the instant case the essential principle is that the rights of the plaintiffs and cross-defendant to the waters in question were quieted and confirmed by the prior decree. The decree did not adjudge that Logan City had no rights whatever in the waters in controversy. It determined only that Logan City had no rights adverse to the rights which were decreed. So far as appears here, the rights claimed by Logan City in this action, aside from the question of fluctuating the flow of the river, are not adverse to nor inconsistent with the rights of the plaintiffs and cross-defendant. Both may be exercised without interference with the other, and it is wholly immaterial which right is first in point of time. But when the right to impede and fluctuate the flow of the river is asserted by the upper user to the detriment of users below, a conflict arises, and the upper

claim, to that extent, becomes adverse to the rights of the lower users, and the question of priority of right becomes important. The former adjudication is effective only in preventing Logan City from interfering with the decreed rights. Otherwise, so far as the decree is concerned, it may exercise any use of the waters in question it may desire. But the former decree is plainly a conclusive determination against Logan City that the specific rights therein defined of the plaintiffs and cross-defendant are superior and paramount to any adverse claim of Logan City. The trial court, in so deciding, arrived at a correct conclusion.

The second ground of complaint by Logan City is based upon the refusal of the trial court to permit it to make certain proof of its claim for power purposes, and the omission of the court to determine and adjudge in its decree that Logan City had such right, even though it was secondary and inferior to the plaintiffs' rights.

At the trial Logan City offered certain evidence, relating to matters occurring before the date of the decree above referred to, in support of its claim tending to show that its right was superior and paramount to the rights of the plaintiffs and the cross-defendant. The plaintiffs and cross-defendant objected to this evidence, upon the ground that the priority of their rights had been conclusively determined by the former decree, at the same time expressly admitting that Logan City had the secondary and subordinate right to the use of the water for power purposes which it claimed. The rejection of this evidence by the trial court, therefore, meant no more than to prevent Logan City from questioning what had previously been conclusively adjudged against it. And so far as concerns the relief awarded to the plaintiffs and cross-defendant the matter was immaterial.

But, since the action was in part to determine and adjudicate the rights of the parties to the use of the waters in question, and Logan City was called upon to set forth its rights, we are clearly of opinion that, after having done so,

and after its rights (though secondary) had been admitted, the court should have determined and declared such rights in the decree, adjudging the same to be valid and subsisting, and secondary only to the superior rights defined and determined in favor of the other parties to the decree. This would, perhaps, have been done upon application by the city, but at the time the city was claiming its rights to be superior to its adversaries. Nevertheless a proper and complete determination of the controversy required the confirmation of the city's rights, by the decree, as the facts showed them to be.

Appellants' counsel have submitted arguments upon assignments of error relating to the admission and rejection of evidence at the trial with respect to the fluctuation of the water in the river by the operation of the city's power plant. The findings of the court as to the cause and extent of the fluctuation of the river flow are also questioned. The hearing of this feature of the case took a wide range. There was much expert and technical evidence received. It is impracticable to review it here. It must suffice that we have carefully considered it, and that we conclude that there is sufficient evidence to support the findings of fact made by the court, and that there was no material error in any ruling of the trial court in the admission or rejection of evidence.

It follows that the decree appealed from, so far as it goes, is affirmed. The trial court, however, should have determined and confirmed the rights of Logan City as the facts in the case showed them to be. It is ordered that the cause be remanded to the district court of Cache county, and that court is directed to amend its findings and decree, so as to appropriately establish and confirm the admitted rights of the city, decreeing them to be valid and subsisting, and subordinate only to the superior rights of the other parties to the decree. No costs allowed to either party.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.