157 P.2d 484

**MARTINEZ et al. v. MARTINEZ et al.**

**No. 4709.**

Supreme Court of New Mexico.

March 19, 1945.

Floyd W. Beutler and R. Howard Brandenburg, both of Taos, for appellants.

William A. Brophy, of Albuquerque, and Everett M. Grantham, former U. S. Atty., and Howard F. Houk, U. S. Atty., both of Santa Fe, for appellees.

BRICE, Justice.

On the 31st day of July 1893 there was pending in the Territorial district court of Taos County, a suit entitled, "Francisco Martinez y Martinez, et al, versus Malaquias Martinez et al, No. 446" on the docket of that court. On the date named the following decree was entered: "This cause coming on to be heard upon the report of the commissioners heretofore named by the court to justly and equitably apportion the waters of the Rio Lucero among the respective claimants thereto, parties to this suit, such commissioners being Juan Santisteven and Alexander Gusdorf, who in such order were authorized to select a third person as umpire should they so desire, and said commissioners having selected William L. McClure as umpire with them and having made report to this court in accordance with such order, the complainants herein being represented by their solicitor Honorable N. B. Laughlin and the respondents by their solicitor Edward L. Bartlett, upon their motion to approve and confirm such report of said commissioners and umpire in the premises: It is now here by the Court, finally ordered, adjudged and decreed; That, the report of such commissioners and umpire in the premises do stand and is hereby in all things approved and confirmed, and in accordance therewith it is further ordered, adjudged and decreed that the people of the Arroyo Seco, Arriba, are entitled to and shall forever have thirty per cent of the total water in the Rio Lucero at all seasons of the year; That the people of the Pueblo de Taos, shall forever have thirty-five per cent of such total water; that the people of El Prado shall forever have and are entitled to thirty-five per cent of such total water of the Rio Lucero. And that in case there shall be any surplus of such waters after supplying the settlement of El Prado and the Pueblo de Taos, the same shall belong to the people of the Arroyo Seco, Abajo, who shall forever be entitled to the same. * * *"

On the 14th day of August 1940 this proceeding was instituted by filing in the same cause an affidavit subscribed and sworn to by Manuel de Pineda and Jose M. Quintana, the substance of which was as follows:

The affiants are a committee representing the community of Arroyo Seco, Arriba, who are the owners of lands with water rights supplied from the flow of the Rio Lucero in Taos County. The Pueblo de Taos is a community corporation existing under the laws of New Mexico and is the owner of community lands with like appurtenant water rights.

This suit (the original action) was instituted to determine the rights to the use of the waters of the Rio Lucero; and the parties, including the Pueblo de Taos, appeared in that cause by their respective attorneys and submitted themselves to the jurisdiction of the court. It was adjudged by the decree of 1893 that appellee, Pueblo de Taos, was entitled to the use of 35 percent of the flow of the Rio Lucero; that the people of El Prado were entitled to

the use of 35 percent thereof, and that the people of Arroyo Seco, Arriba, were entitled to 30 percent of the use thereof.

The diversion point of the water is located upon the lands of the Pueblo de Taos, and subject to the control of the Indians comprising that pueblo. Since its entry and until the summer of 1939 the waters of the Rio Lucero were divided as provided by the decree of 1893. In the summer of 1939 the Indians of Pueblo de Taos violated the terms of the decree by diverting and using forty-six and seven-eighths percent of the total water of the Rio Lucero, thereby reducing the water appropriated by the people of Arroyo Seco, Arriba to 18⅛ percent instead of 30 percent to which they are entitled.

"That your affiants make this affidavit for the purpose of obtaining an order of this Court requiring the Pueblo de Taos to show cause, if any there be, why the said Pueblo de Taos and the Indians comprising the same, should not be required to comply with the decree of this Court made and entered as aforesaid, and to release to the people of the community of Arroyo Seco Arriba, 30% of the water of said Rio Lucero and to the people of the community of El Prado 35% thereof, retaining unto themselves 35% thereof and no more."

This affidavit was no doubt intended as an application for an injunction to restrain the appellee from using more than 35% of the waters of the Rio Lucero, and we will so treat it.

On the 18th day of July 1941 the appellee filed its plea to the jurisdiction of the district court to act in the matter, as follows:

"The Pueblo of Taos appears specially, solely and only for the purpose of suggesting to the Court that this Court has no jurisdiction of the Pueblo of Taos, the Indians comprising the same, or of the subject matter of this proceeding. As grounds showing absence of jurisdiction in the Court the Pueblo of Taos states:

"1. The Pueblo of Taos is a community of Pueblo Indians in the State of New Mexico and said Pueblo of Taos and the Indians comprising same are in a state of tutelage and are under the guardianship and protection of the United States. All of the lands and the water appurtenant thereto of the Pueblo of Taos and of the Indians comprising said Pueblo are restricted Indian property which cannot be alienated in any wise and are under the guardianship and protection of the United States of America.

"2. The United States of America has the exclusive jurisdiction and control over the lands and water rights of the Pueblo of Taos and of the Indians comprising said Pueblo, and this Court has no power to change, alter, affect, adjudicate or in any manner determine the rights of the Pueblo of Taos or of the Indians comprising said Pueblo unless by consent of the United States, and the United States has prohibited the alienation of said property in any manner.

"3. The United States is not a party to this proceeding; it is not represented in this proceeding; it has not consented to the jurisdiction of this Court. The Pueblo of Taos cannot confer jurisdiction upon this Court of the subject matter of this proceeding nor of said Pueblo nor of the Indians comprising said Pueblo.

"4. Cause No. 1785 in equity entitled the United States of America as guardian of the Indians of the Pueblo of Taos in the State of New Mexico, plaintiff, vs. Preciliano Garcia, et al, defendants, is pending in the District Court of the United States for the District of New Mexico. Said cause is between the parties in this proceeding or their predecessors, involves the same subject matter and a final decree was entered therein April 26, 1929, for the plaintiff. In said decree, among other things, said court adjudicated:

" 'And the Court, while handing down the foregoing as its Final Decree, retains jurisdiction of this cause for the purpose of making any orders or issuing any writs necessary to give full effect thereto.'

"5. The Pueblo of Taos is a sovereign governmental body subject to the United States, is not subject to suit in this Court without its consent, and it has not consented to be sued.

"Wherefore, Pueblo of Taos prays that this proceeding be abated."

This plea was not answered, although facts were pleaded of which the district court could not take judicial notice. Rul-ing upon the plea, the district court entered the following order:

"This matter came on to be heard upon the affidavit of Manuel D. Pineda and Jose M. Quintana, a committee representing the people of the community of Arroyo Seco Arriba of Taos County, New Mexico, the order to show cause heretofore issued by the Court, and the plea to the jurisdiction filed by the Pueblo of Taos. The affiants appeared by their attorney Floyd Beutler, The Pueblo of Taos appeared specially, solely, and only for the purpose of submitting said plea to the jurisdiction by the attorney for said Pueblo of Taos, William A. Brophy. Upon hearing the arguments of the attorneys, the Court finds that the plea to the Jurisdiction should be sustained.

"It is Therefore, Ordered, Adjudged, and Decreed that the plea to the jurisdiction filed herein by the Pueblo of Taos be and the same is hereby sustained. The affiants except to the action of the court."

The original pleadings have been lost and we can determine the issues only by reference to the decree of 1893, which was entered by consent. It purported to establish rights to the use of the water flowing in the Rio Lucero in the three parties to the suit, and the portion each was entitled to use. If valid the effect of the decree was to quiet title to the use of the water of that stream. Logan, Hyde Park & Smithfield Canal Co. v. Logan City, 72 Utah 221, 269 P. 776. It appears from the affidavit filed as the basis of this proceeding that the water of the Rio Lucero was

apportioned according to the terms of that decree until the summer of 1939 (a period of 46 years), at which time it is said the Indians, who had control of the diversion works, took from the stream water in excess of the amount apportioned to them. The rights of the respective parties were not protected by an injunction, nor did the court in its decree retain jurisdiction for any purpose.

The fact alone that the original decree was entered nearly a half century ago is not an obstacle to its enforcement by the successor court (State district court). The identical question was decided by the Supreme Court of the United States in Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123. A decree was entered in the Circuit Court quieting title to lands in one Morton. No jurisdiction was specifically reserved for its enforcement or for any other purpose. Many years later Woolworth, grantee of Morton, filed a supplemental bill alleging that Root (the defendant in the original action) had taken possession of the real property by fencing it and prayed for the enforcement of the original decree. Root contended that Woolworth's remedy was an action in ejectment. The Supreme Court held that the circuit court could enforce the decree in favor of Woolworth and sustained the circuit court in issuing an injunction to enforce it; also that Woolworth was not required to resort to an action in ejectment to secure possession of his property.

The appellee herein does not attack the original decree, nor is it asserted that the United States did not consent thereto. But it is urged that the trial court has no power to enforce it for reasons stated in appellee's plea to the jurisdiction of the district court.

The Supreme Court of the United States in United States v. Joseph, 94 U.S. 614, 619, 24 L.Ed. 295, decided in 1877, had for consideration the question of whether the defendant Joseph, who had settled upon lands of the Pueblo of Taos was liable to the penalty prescribed by the Act of 1834 which declared that every person who makes a settlement on any lands belonging, secured or granted by the United States to any Indian tribe is liable to a penalty of $1,000. It was held that the Indians of the Pueblo of Taos were not an "Indian Tribe" within the meaning of the Act; that the Act of Congress applied to the lands of Indian tribes, the ultimate title of which was held by the United States with no right in the Indians to transfer it or their possession, without the consent of the government; that to the contrary the Pueblo Indians held a right superior to that of the United States, and concluded as follows: "If the defendant is on the lands of the pueblo, without the consent of the inhabitants, he may be ejected, or punished civilly by a suit for trespass, according to the laws regulating such matters in the Territory. If he is there with their consent or license, we know of no injury which the United States suffers by his

presence, nor any statute which he violates in that regard."

If the federal courts had jurisdiction of this cause it was denied in the Joseph case; and the only protection had at that time by the Pueblo Indians and others involved in justiciable controversies with them, was by action in the territorial or state courts. This was the status of the decisions of the federal courts, to which the Government conformed from 1877 until the decision in United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 6, 58 L.Ed. 107, decided in 1913. It was therein held that the act of Congress (29 St. at L. 507, 25 U.S.C.A. § 241) prohibiting the introduction of intoxicating liquors into "Indian Country," supplemented by Sec. 2 of the New Mexico Enabling Act on the same subject, applied to the lands of Pueblo Indians. Among other things, the court stated: "It also is said that such legislation cannot be made to include the lands of the Pueblos, because the Indians have a fee-simple title. It is true that the Indians of each pueblo do have such a title to all the lands connected therewith, excepting such as are occupied under Executive orders, but it is a communal title, no individual owning any separate tract. In other words, the lands are public lands of the pueblo, and so the situation is essentially the same as it was with the Five Civilized Tribes, whose lands, although owned in fee under patents from the United States, were adjudged subject to the legislation of Congress enacted in the exercise of the government's guardianship over those tribes and their affairs."

The court referred to the Joseph case and said: "That case cannot be regarded as holding that these Indians or their lands are beyond the range of congressional power under the Constitution."

What remained of the Joseph case, if anything, was effectively disapproved in United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023. That suit was brought by the United States against Candelaria et al. in the Federal District Court of this state to quiet title to certain lands in the Indian pueblo of Laguna. The defendants denied the wardship of the United States and pleaded in bar two decrees in their favor rendered in prior suits brought against them by the pueblo (one in the state district court and the other in the Federal District Court) to quiet title to the same lands. Both contentions were sustained by the Federal District Court and an order was entered dismissing the complaint upon the grounds that the matters presented "were res judicata and that there was no federal question [involved]."

Upon appeal to the Circuit Court of Appeals, that court certified to the Supreme Court the following question: "Are Pueblo Indians in New Mexico in such status of tutelage as to their lands in that state that the United States, as such guardian, is not barred either by a judgment in a suit involving title to such lands begun in the territorial court and passing to judgment

after statehood or by a judgment in a similar action in the United States District Court for the District of New Mexico, where, in each of said actions, the United States was not a party nor was the attorney representing such Indians therein authorized so to do by the United States?"

To this question the Supreme Court answered:

"To the first question we answer that the United States is not barred. Our reasons will be stated: The Indians of the pueblo are wards of the United States, and hold their lands subject to the restriction that the same cannot be alienated in any wise without its consent. A judgment or decree which operates directly or indirectly to transfer the lands from the Indians, where the United States has not authorized or appeared in the suit, infringes that restriction. The United States has an interest in maintaining and enforcing the restriction, which cannot be affected by such a judgment or decree. This court has said in dealing with a like situation: 'It necessarily follows that, as a transfer of the allotted lands contrary to the inhibition of Congress would be a violation of the governmental rights of the United States arising from its obligation to a dependent people, no stipulations, contracts, or judgments rendered in suits to which the Government is a stranger, can affect its interest. The authority of the United States to enforce the restraint lawfully created cannot be impaired by any action without its consent.' * * *

"But, as it appears that for many years the United States has employed and paid a special attorney to represent the Pueblo Indians and look after their interests, our answer is made with the qualification that, if the decree was rendered in a suit begun and prosecuted by the special attorney so employed and paid, we think the United States is as effectually concluded as if it were a party to the suit." United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 563, 70 L.Ed. 1023.

Following the decision of the Supreme Court, the Circuit Court of Appeals held that the pueblo was represented in the state court by a special attorney employed and paid by the United States to represent the Pueblo Indians and to look after their interests, and upon these facts stated: "Applying to such holding the rule announced by the Supreme Court * * * necessitates the conclusion that the United States was bound by the adjudication in the state court." United States et al. v. Candelaria et al., 9 Cir., 16 F.2d 559, 563.

See also Privett v. United States, 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889.

All congressional legislation authorizing the employment of a special attorney to represent the Pueblo Indians at the expense of the United States was enacted subsequent to the entry of the 1893 decree.

We conclude from the foregoing authorities that the decree of 1893 did not bind the United States, but as to it is utterly void, notwithstanding state courts only were open to the Pueblo Indians and

others having justiciable controversies with them; that the Indians employed their own attorneys to represent them in the case; that the prior decisions of the United States courts had held that the Pueblo Indians were not wards of the government, and that the decree in question was entered nearly a half century ago and had been the basis of the division of the waters of the Rio Lucero since its entry.

The fact that the attorney who represented appellee in the original action was at that time the Attorney General of the Territory of New Mexico, is immaterial. He did not represent the United States, nor had he congressional authority to represent the pueblos and Pueblo Indians.

But, notwithstanding the decree is void as to the United States, it does not follow that it is void as to the appellee Pueblo of Taos, or that the appellee is authorized to question whether it binds the United States.

We understand that Indian affairs are within the exclusive control of the Congress, and that it has authority to provide that all legal controversies involving Indians and their property are within the exclusive jurisdiction of Federal courts. Winton v. Amos, 255 U.S. 373, 41 S.Ct. 342, 65 L.Ed. 684.

Whether this decree is binding upon appellee depends upon whether at the time of its entry exclusive jurisdiction of questions involving title to Pueblo Indian lands had, by congressional action (express or implied) been conferred upon the Federal courts.

It is difficult to reconcile Federal court decisions on the question, and we will not attempt to do so. But no decision of a Federal court has been cited by appellee or discovered in our search that has held a state court's decrees respecting Pueblo Indian lands void; but only void as to the United States, and then only in case the United States is not a party or in case the pueblo or Indians were not represented by an attorney acting under congressional authority. United States v. Candelaria, supra.

We are of the opinion that so far as those decisions concern Pueblo Indian lands and other lands owned in fee simple by Indians under guardianship of the United States, that in the absence of congressional legislation conferring exclusive jurisdiction of such controversies on Federal courts, that Indians and Pueblos are bound by the decisions of a state court; or are so bound if such courts are open to them as litigants and they invoke its jurisdiction. This view is supported by United States v. Candelaria, supra, and other cases.

In Fulsom v. Quaker Oil & Gas Co., 10 Cir., 35 F.2d 84, it was held that as the Indians of Oklahoma were authorized by the state's Constitution to sue in state courts, they are bound as other litigants by the judgments of those courts. Among the cases cited in support of this conclusion is United States v. Candelaria, supra. The Fulsom case was followed by the same court in Mars v. McDougal, 40 F.2d 247, 249. An action was brought by the

United States as guardian of the Indians to enforce restrictions upon the alienation of their lands and to set aside conveyances allegedly in violation thereof. The United States dismissed its suit with prejudice. The court held that the state decree was binding upon the Indians, stating: "The Oklahoma court had jurisdiction of the parties and of the subject matter and, having jurisdiction, its decree, whether right or wrong, is valid and binding and is res adjudicata until set aside by proper proceedings. * * * The fact that Lusanna Brink was a full blood Creek Indian does not alter the situation. Under section 6, art. 2, of the Constitution of Oklahoma, Lusanna Brink was authorized to sue in the district court of Creek County to establish her interest in such allotment. When she availed herself of that privilege and submitted herself and her cause to the jurisdiction of that court, she became bound by the decree entered therein the same as any other person."

In the case of Pueblo of Picuris v. Abeyta, 50 F.2d 12, 13, the Circuit Court of Appeals of the Tenth Circuit was considering a case brought by the United States as guardian of that pueblo under the Pueblo Lands Act (43 Sts. at Large 636, 25 U.S. C.A. § 331 note). That court said: "It was held, prior to the enactment of the Pueblo Lands Act, that the pueblo was a juristic person, able to sue and defend with respect to its land. Lane v. Pueblo of Santa Rosa, 249 U.S. 110, 39 S.Ct. 185, 63 L.Ed. 504. Any decree or judgment rendered in an action brought by or against such pueblo did not, however, bind the United States in its sovereign capacity as guardian of such Indians, and was not therefore res judicata in another action involving the same controversy brought by the United States. United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L. Ed. 1023."

The questions involved in that case are not material here. The above statement of the court emphasizes the fact that the United States is not bound by any decree involving Pueblo Indian lands, but it is not stated that such decrees are void as to the Indians or pueblos. Indeed, if they are void, as appellee contends, the suits brought by the United States to cancel them have been effective only to clear the record. They are not affected in any way by a determination of that fact in another action.

A similar question was before the district court for the Western District of New York in People ex rel. Charles v. Blackchief, 8 F.Supp. 295, 296. Provision was made by the laws of New York for suits by the Indians and the question was whether the courts of that state had jurisdiction to partition certain of their lands. The Federal District Court stated: "It has been repeatedly said by this court that it is its view that the federal government has the paramount right to take jurisdiction over the Indian Nations or tribes. This rule is recognized by the Supreme Court of the United States. * * * It is recognized in the highest court of the state of New York. Mulkins v. Snow, 232

N.Y. 47, 133 N.E. 123. However, the federal authorities acting under statutory right have not sought to regulate the administration of the affairs of the Indians, but have recognized the right of the state court to do this. In the 'Constitutional Charter' of 1848 we find the foundation laid for the enactment of state legislation made in the administration of the affairs of the Indians. The Indian Law of the state of New York contains many provisions with respect to the powers of the state in its dealings with the Indians within the state, and this statute has been uniformly sustained in its provisions in that respect."

In Larkin v. Paugh, 276 U.S. 431, 48 S. Ct. 366, 72 L.Ed. 640, it was held that the courts of Oklahoma had jurisdiction of actions involving Indian lands if the fee-simple title had passed to the Indians. The court stated that no effort had been made to have the decree reviewed or vacated in any direct proceeding and that this could not be done in a collateral attack; that the decree entered by the state court was valid and binding on the Indians.

The Indian pueblos of New Mexico have been legal entities with authority to sue and be sued in this state for almost a century.

The following statute, now in force, was enacted in 1847: "The inhabitants within the state of New Mexico, known by the name of the Pueblo Indians, and living in towns or villages built on lands granted to such Indians by the laws of Spain and Mexico, and conceding to such inhabitants certain lands and privileges, to be used for the common benefit, are severally hereby created and constituted bodies politic and corporate, and shall be known in the law by the name of the Pueblo de ———, (naming it), and by that name they and their successors shall have perpetual succession, sue and be sued, plead and be impleaded, bring and defend in any court of law or equity, all such actions, pleas and matters whatsoever, proper to recover, protect, reclaim, demand or assert the right of such inhabitants, or any individual thereof, to any lands, tenements or hereditaments, possessed, occupied or claimed contrary to law, by any person whatsoever, and to bring and defend all such actions, and to resist any encroachment, claim of trespass made upon such lands, tenements or hereditaments, belonging to said inhabitants, or to any individual." (L.1847, p. 35), Sec. 54-1601, N.M.Sts.1941.

The Supreme Court of the United States in Lane v. Pueblo of Santa Rosa, 249 U. S. 110, 39 S.Ct. 185, 63 L.Ed. 504, had the following to say regarding the capacity of pueblos to sue: "After the Gadsden Treaty Congress made that region part of the territory of New Mexico and subjected it to 'all the laws' of that territory. Act Aug. 4, 1854, c. 245, 10 Stat. 575. One of those laws provided that the inhabitants of any Indian pueblo having a grant or concession of lands from Spain or Mexico, such as is here claimed, should be a body corporate, and as such capable of suing or defending in respect of such lands. Laws

.New Mex. 1851–52, pp. 176, 418." (L. 1847, p. 35).

█ The pueblos and Indians have invoked the jurisdiction of the state court to protect them in their property and personal rights a number of times; and the territorial and state courts have always been open to them. The recent cases of Trujillo v. Prince, 42 N.M. 337, 78 P.2d 145; and Tenorio v. Tenorio, 44 N.M. 89, 98 P.2d 838, 845, were suits by Pueblo Indians. The question of jurisdiction was decided in favor of the Indians in both cases. In the Tenorio case, Justice Sadler reviewed the authorities exhaustively and concluded that the state court had jurisdiction of a divorce action brought by a Pueblo Indian against another Pueblo Indian. It is stated: "Unquestionably, the lands of the Pueblo Indians in New Mexico are to be considered 'territorially' a part of the Territory (now State) of New Mexico. It is obvious from a reading of this section (48 U.S.C.A. § 1451) that only the lands of 'Treaty Indians' were to be, 'excepted out of the boundaries, and constitute no part of any territory now or hereafter organized until such tribe signifies its assent to the President to be embraced within a particular territory'. It seems to us a logical sequitur to this statute that the lands of non-treaty Indians, as a matter of course, are to be deemed 'embraced within the territorial limits or jurisdiction of any State or Territory' wherein such lands or reservations are situate, unless excepted by congressional legislation."

We made reference to the Candelaria case, saying: "It holds, nevertheless, that the United States as such guardian is bound by a decree against Pueblo Indians affecting title to their lands if the Indians were represented by an attorney employed by the United States to look after the interests of the Indians. The court said: 'Coming to the second question, we eliminate so much of it as refers to a possible disregard of a survey made by the United States, for that would have no bearing on the court's jurisdiction or the binding effect of the judgment or decree, but would present only a question of whether error was committed in the course of exercising jurisdiction. With that eliminated, our answer to the question is that the state court had jurisdiction to entertain the suit and proceed to judgment or decree. Whether the outcome would be conclusive on the United States is sufficiently shown by our answer to the first question.' "

█ The compact between the United States and state of New Mexico, incorporated in the state's Constitution, declared the authority and sovereignty of the United States over Indian lands, and the agreement of the people of New Mexico thereto; but it added nothing to the authority and jurisdiction of the United States over such lands as it existed under prior acts of Congress. The provision is as follows: "The people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof, and to all lands lying

within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through the United States, or any prior sovereignty; and that until the title of such Indian or Indian tribes shall have been extinguished the same shall be and remain subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States; * * *." Art. 21, Sec. 2, N.M.Constitution.

The attorney for the Pueblo Indians, employed under congressional authority, who represents the appellee Pueblo of Taos in this proceeding, is not authorized to represent the United States in connection with Indian affairs. His sole authority is to represent the Indians and the pueblos. Appellee's assertion that the United States was bound by the decree in the case of United States v. Candelaria, supra, because the attorney employed by authority of Congress to represent the Indians, also represented the United States, is not correct. The United States was not a party to that litigation, but the Supreme Court held that it had consented thereto because it had employed an attorney to represent the pueblos and Indians in such matters. Likewise the attorney for appellee does not represent the United States in this litigation, but nevertheless his special appearance not only binds the appellee but also binds the United States as guardian of the Indians to the extent that any other litigant would be bound under similar circumstances. This disposes of paragraphs 1, 2, 3 and 5 of appellee's plea to the jurisdiction.

It is asserted in paragraph 4 thereof that there is a cause pending in the United States District Court for the District of New Mexico between the same parties and involving the same subject matter as in this case; that the final decree was entered therein on April 26, 1929 and that the court by the terms of the decree retained jurisdiction of the cause for the purpose of making new orders or issuing any writs necessary to give full effect thereto. Assuming the correctness of this allegation, we are of the opinion that the suit is not pending but that it was terminated by the final decree entered in the cause. The provision for the enforcement of the decree of the federal court is a power inherent in the court that needed no such declaration to aid it (Ames Realty Co. v. Big Indian Mining Co., D.C., 198 F. 367; Village of Springer v. Springer Ditch Co., 47 N.M. 456, 144 P.2d 165); although some effect has been ascribed to a similar provision in a decree foreclosing a mortgage. Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629.

In Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 81, 67 L.Ed. 226, 24 A.L. R. 1077, the question was considered, regarding which the Supreme Court stated: "It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of

the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction."

Also see Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390; Baltimore & Ohio Ry. Co. v. Wabash Ry. Co., 7 Cir., 119 F. 678; and Annos. 24 A.L.R. 1084; 1 C.J.S., Abatement & Revival, § 67; 1 A. J. "Abatement & Revival" Sec. 40. This question is not one of jurisdiction, and it is resolved against the appellee.

The appellee devotes the larger part of its brief to questions of law not raised below and statements of purported facts not in the record. Obviously such questions have no place in this proceeding.

The principal question thus raised is whether a decree of the United States District Court of the District of New Mexico, affirmed by the Tenth Circuit Court of Appeals (Garcia v. United States, 43 F.2d 873) deprives the State District Court of its power to enforce the decree of 1893. Appellee's appraisement of the facts of that case is stated in great detail, none of which appears in the record, and none of which can be considered here. It states among other things that a large tract of land known as the Tenorio Tract with appurtenant water rights was decreed to be the property of appellee and that it had been claimed by the people represented by appellants. Regarding the Tenorio Tract appellee states, after copious quotations from the Garcia case: "Thus it will be seen that the title to the Tenorio Tract and all of its appurtenant rights on August 14, 1940, when the affidavit praying for an order to show cause was filed by two gentlemen claiming to be a committee representing the people of Arroyo Seco Arriba (tr. pp. 2, 3), was in the United States of America as Guardian of the Indians of the Pueblo of Taos or in the Pueblo of Taos. For the purposes of this case, however, it makes no difference whether the title rested in the United States or in the Pueblo of Taos because the Pueblo of Taos is under the guardianship of the United States and its real property is restricted. The United States constructed the diversion dam referred to in the appellants' brief (p. 3) and it was the United States which claimed the additional 11–7/8ths% of the water rights out of the Rio Lucero because that proportion of the water rights was appurtenant to the Tenorio Tract, which with all of its appurtenances no longer belonged to or could be claimed by the People of Arroyo Seco inasmuch as the United States had successfully quieted title to said Tenorio Tract in the Garcia case as against said claimants."

There are several answers to this question. (1) There are no facts in the record to support the assertions of appellee; (2) no such question was raised below; (3) the question raised is not jurisdictional, and, (4) the validity of the original decree is not questioned.

It appears that appellee assumes that this is an original proceeding to try the right to the use of water appurtenant to the Tenorio Tract (whatever that may be); but no such question was before the district court originally, or in this proceeding to enforce the original decree; or if so, it is not disclosed by the record. Of course the right to the use of the water may have been lost in any one of several ways. It may have been abandoned; sold and transferred to other lands; lost by adverse user; or it may be (a question we cannot decide on the present record) that the decree in the Garcia case, which was brought under the Pueblo Lands Act (43 Sts. at L. 636, 25 U.S.C.A. § 331 note), could have been pleaded in bar of all rights claimed by appellant under the decree of 1893; but none of these possibilities are made issues in the case.

On the other hand the United States may be entirely satisfied with the decree of 1893. According to appellee's pleading, the water was apportioned as provided by it for 46 years until 1939, which was five years or more after the entry of the decree in the Garcia case. The United States may sue to cancel the old decree as has been its procedure when not satisfied with decrees in such causes in which it was not a party, but it has not done so. We conclude the trial court erred in sustaining appellee's plea to the jurisdiction of the district court.

The cause should be reversed and remanded with instructions to the district court to proceed with its consideration not inconsistent herewith, and

It is so ordered.

MABRY, C. J., and SADLER and BICKLEY, JJ., concur.

LUJAN, J., not participating.