570 P.2d 309

**Ted M. ORTIZ and Cecilia T. Ortiz, his wife, Plaintiffs-Appellees,**

v.

**Lorenzo SUAZO, Defendant-Appellant.**

**No. 11243.**

Supreme Court of New Mexico.

Oct. 20, 1977.

Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Albuquerque, for defendant-appellant.

Sutin, Thayer & Browne, Jay D. Hertz, Albuquerque, for plaintiffs-appellees.

## OPINION

EASLEY, Justice.

Ted M. Ortiz and Cecilia T. Ortiz, his wife (Ortiz), filed a suit against Lorenzo Suazo (Suazo) to quiet title to a 4.6 acre tract of land in Taos County (the Suazo tract). Defendant Suazo moved to dismiss on the grounds that the United States and the Pueblo de Taos (Pueblo) were indispensable parties. The district court denied the motion and this Court declined to consider the issues on an interlocutory appeal. The district court found for Ortiz and we affirm the decision of that court.

Ortiz claims his chain of title dates back to a land grant to Antonio Martinez in 1716 by the Spanish Colonial Government, which Grant, he contends, extinguished any rights of the Pueblo from which Suazo has a traditional assignment of the use of the land. Suazo claims that the grant to Antonio Martinez was specifically made subject to the Pueblo's aboriginal title.

Ortiz further asserts that, even if it is held that the Pueblo retained title by aboriginal right after the land grant to Martinez, that title was extinguished by a quiet title suit that was filed in the Territorial Court of Taos County in 1902. *Manby v. Martinez,* Cause No. 2094 in the New Mexico Supreme Court, unreported. Ortiz points to the fact that this Court on June 14, 1918, upheld the lower court's decision that the title be quieted in Manby to all the Antonio Martinez Grant, with the exception of the Tenorio Tract not material hereto. Suazo counters by claiming that the Territorial District Court and this Court had no jurisdiction over the matter because the federal courts at that time had exclusive jurisdiction over Indian land disputes.

Suazo alleges that the territorial court did not have jurisdiction for the further reason that, although a federally-authorized Special Attorney for the Pueblo entered his appearance in the case as was permitted by federal statute, the attorney did not *complete* the prosecution of the case as Special Attorney and was retained by the Pueblo privately to prosecute the case to its conclusion, including the appeal to this Court. Ortiz maintains that the Pueblo answered in the cause, made no challenge to the court's jurisdiction, and remained a party in the case, and that thus the Pueblo was subject to the jurisdiction of the territorial court and to this Court, which decided the case after statehood.

## Facts

The Suazo tract is situated in what has been known as the Antonio Martinez Grant in an area where the Pueblo claims that there has been continuous Indian occupancy since time immemorial. In 1902 A. R. Manby filed an action to quiet title to the entire Martinez Grant. The Pueblo, through a Special Attorney appointed pursuant to Congressional authority, Ch. 545, 30 Stat. 571, at 594 (1898), entered its appearance asserting title to the Tenorio Tract and the Garcia de la Mora Tracts. The Suazo tract is not a part of the Tenorio Tract but the evidence is not clear as to whether it comes within the boundaries of the Garcia de la Mora Tracts.

The trial court in the instant case found that all pleadings filed by the Pueblo up until September 1914 reflected that the Special Attorney for the Pueblo had acted as its counsel. However, after September 1914, the file showed that Francis C. Wilson, who had previously been one of the Special Attorneys prosecuting the case for the Pueblo was representing it as a private attorney and that no regularly appointed Special Attorney was representing the Pueblo.

On February 21, 1916, the District Court of Taos County entered its final decree finding that the heirs of Antonio Martinez had been in continuous possession of the entire area of the grant which would include the Suazo tract, as well as the Tenorio and Garcia de la Mora Tracts, concluding that all other persons claiming any interest adverse to Manby were forever barred and estopped from claiming any right or title to the premises and quieted title in Manby.

No question was ever raised by the Pueblo in Manby regarding the jurisdiction of the trial court; and it was not an issue on the appeal to this Court. No objection was made in that case at any point regarding the absence of a Special Attorney during part of the trial and on appeal.

On June 14, 1918 this Court entered a final judgment reversing the trial court as to the Tenorio Tract, but affirming the decision in all other respects. This had the effect of quieting title in Manby as to the Suazo tract.

No appeal was taken from that decision to the U. S. Supreme Court to determine the jurisdiction of the territorial and state courts to settle this Indian land dispute.

In the instant case the trial court found the facts to be as related above and concluded that Suazo has no right, title or interest in the property; that the final decree in Manby extinguished the title of the Pueblo; and that Ortiz was entitled to a decree quieting title in him.

Much of the evidence cited in the briefs on issues that are not dispositive of this case is not repeated herein.

## The Decree in Manby v. Martinez

Contrary to the claims of Suazo, the trial court in Manby clearly addressed the question of aboriginal Indian title with respect to the lands claimed by the Pueblo and found that there was nothing in the record to show that the Pueblo ever had, or held, the exclusive or notorious possession of that land. That court held, on the contrary, that all the land in the Grant had been in the continuous and exclusive possession of Antonio Martinez and his heirs and assigns.

This Court, in the Manby case on appeal, in effect held that, as to the Suazo tract, the trial court's findings were supported by substantial evidence and upheld the conclusions derived therefrom. No appeal having been taken to the U. S. Supreme Court, our key question is whether the Manby decision is res judicata as to the claims of Suazo. The trial court so held; and we affirm that decision.

## State v. Federal Jurisdiction

The Siren call is irresistible to immerse oneself in the romanticism inherent in this case: a parley between the representative of His Majesty's Governor and Captain General of New Mexico, Captain Miguel Tenorio de Alba, at the Pueblo of San Geronimo de los Taos with "the Royal Houses of the said Pueblo, the Casique and other

aged Indians;" time-worn Spanish documents; ancient Indian ruins and the lore of Indian possession of the land "since time immemorial;" tracing the history of the sixty thousand acre land grant and the family tree of Antonio Martinez over a two hundred sixty year span; and fascinating testimony from aged Indians and learned experts in Indian and Spanish history. Meanwhile, back at the courthouse, a close look at the law tints the poetic background with irrelevance and forces upon us a more prosaic question of jurisdiction.

■ Suazo now challenges the jurisdiction of the state courts to have heard or decided the *Manby* case, although this issue was not raised at any level in that suit. This claim is based on the theory of exclusive jurisdiction being in the federal courts. In any event, the contention is not meritorious for the reason that the Organic Act of September 9, 1850, ch. 49, § 10, 9 Stat. 446 (1850) created dual original jurisdiction, giving the territorial district courts and the Territorial Supreme Court local jurisdiction and specifying that the territorial district courts were to exercise the same jurisdiction for cases arising "under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States," and that appeal to the Territorial Supreme Court should be allowed "in all cases."

In the case of *Ex parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883) the Court explained this type of double jurisdiction as follows:

> The district court has two distinct jurisdictions. As a Territorial court it administers the local law of the Territorial government; as invested by act of Congress with jurisdiction to administer the laws of the United States, it has all the authority of circuit and district courts.

Id. at 560, 3 S.Ct. at 398.

This law was in effect at the time the *Manby* suit was filed. Since the Taos District Court was the only court available to *Manby,* it cannot be said that he picked the wrong forum.

### Transfer of Jurisdiction

■ It is claimed by Suazo that the territorial district court in *Manby* was divested of jurisdiction when the case was transferred into the state district court after statehood in 1912. In the Enabling Act, ch. 130, §§ 14–15, 36 Stat. 557 (1910), the specific problem regarding transfer of jurisdiction was confronted. The Act provides that if the case was one that would have fallen within the exclusive original cognizance of a federal circuit or district court it was to be transferred to the appropriate federal court sitting within the State of New Mexico; but if the case was of a nature that would have fallen within the concurrent, but not the exclusive jurisdiction of the federal courts, the transfer was to be made to the state courts unless, upon the application of the party within sixty days after the lodgment of the record in the proper court of the state, a party requested removal to the federal courts. No such attempt at removal was made here. The Act further provides that cases not transferable to the federal courts should be heard and determined by the proper state court.

Thus, in *Manby* the state courts properly obtained jurisdiction over the cause.

### Dual Jurisdiction

Furthermore, at the time the *Manby* case was transferred into the state court system in 1912, the state courts under state law had jurisdiction over Indian lands of the Pueblo. *United States v. Joseph,* 94 U.S. 614, 24 L.Ed. 295 (1876) had settled the issue that the Taos Pueblo was not an Indian "tribe" and that therefore the federal government was not authorized under the federal law to exercise control over its lands. Although this aspect of the holding was later reversed by the United States Supreme Court in *United States v. Sandoval,* 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107 (1913), it is not subject to dispute that, at the time our state court assumed jurisdiction over the *Manby* case, the only courts available to settle controversies between the Pueblo Indians and others with regard to Indian lands were the state courts. *Mar-*

tinez v. Martinez, 49 N.M. 83, 157 P.2d 484 (1945).

In *Martinez,* this Court considered the jurisdictional implications of the United States' decisions and decided expressly that those federal cases did not hold that the state court's decrees respecting Indian lands were void, but only void as to the United States. *Martinez,* at 91, 157 P.2d 484, 489.

As we said in *Martinez:*

[N]otwithstanding the decree is void as to the United States, it does not follow that it is void as to the appellee Pueblo de Taos . . ..

We are of the opinion that so far as those decisions concern Pueblo Indian lands and other lands owned in fee simple by Indians under guardianship of the United States, that in the absence of congressional legislation conferring exclusive jurisdiction of such controversies on Federal courts, that Indians and Pueblos are bound by the decisions of a state court; or are so bound if such courts are open to them as litigants and they invoke its jurisdiction. This view is supported by *United States v. Candelaria, supra,* [271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023 (1936)] and other cases.

*Accord, Fulsom v. Quaker Oil & Gas Co.,* 35 F.2d 84 (8th Cir. 1929) *cert. denied,* 276 U.S. 636, 48 S.Ct. 421, 72 L.Ed. 744 (1927).

### State Court Not Divested of Jurisdiction

 After jurisdiction was acquired by the Taos County District Court, that court was not divested of its right to decide the issues, even though the reversal of the *Joseph* decision might have eliminated its jurisdiction had *Joseph* been decided prior to 1912. *See United States v. Candelaria, supra, Mars v. McDougal,* 40 F.2d 247 (10th Cir. 1930), *cert. denied,* 282 U.S. 850, 51 S.Ct. 28, 75 L.Ed. 753 (1930) [cited for the proposition with approval recently in *Whitebird v. Eagle-Picher Co.,* 390 F.2d 831, 834 (10th Cir. 1968)], *see also Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### Finding of Non-Ownership by Indians

 Assuming for the sake of argument that federal courts now have exclusive original jurisdiction over litigation involving Indian lands, when a case is filed in a state court, that court has a threshold decision to make as to whether the case actually involves Indian land. Obviously, if there is no substantial evidence that the land is owned by Indians, the state court has jurisdiction to settle controversies involving non-Indian lands within the state. Moreover, if the court determines that it has jurisdiction, the parties may be precluded from collaterally attacking the judgment on the ground that the determination by the court of its jurisdiction is res judicata between them. *Durfee v. Duke,* 375 U.S. 106, 114, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Restatement of Judgments, ch. 2, § 5, Comment *j.,* at 35.

Restatement of Judgments, ch. 2, § 10, provides:

Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction.

In comment *a* to this section it is explained that the reason behind the rule is to preclude the parties from relitigating a matter determined by a court after a fair opportunity has been afforded to them to litigate the matter. Even where the decision of the court is erroneous, the parties are bound by it.

 The court in *Manby* found that there were no legitimate claims adverse to Manby's title, which foreclosed any Pueblo claim of aboriginal title, and concluded that it had jurisdiction of the parties and the subject matter of the suit. The doctrine of res judicata applies to the same issues raised in this case.

*Special Attorney*

█ There is no merit to Suazo's claim of jurisdictional error because a federally-appointed Special Attorney was not participating at all times during the *Manby* case. The United States Supreme Court in *Candelaria, supra,* held that where, as here, a federally-appointed Special Attorney for the Pueblo appeared and prosecuted the case, the United States has for all practical purposes appeared in the suit and is as effectively bound by the decision as if it had been an actual party. *Candelaria* does not require that the Special Attorney prosecute every aspect of the case to its final conclusion. The Special Attorney represents the United States' as well as the Indians' interests and, as with other counsel, any appearance in and prosecution of the case by him is enough to give the court jurisdiction over, and to bind, those he represents. F. Cohen, Handbook of Federal Indian Law, ch. 19, § 2A(1)(f) (U.N.M. Facimile ed. of 1942 ed.).

Since we dispose of the case on the issues discussed herein, we do not reach other issues raised in the appeal.

The decision of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, J., and BRUCE E. KAUFMAN, District Judge, concur.