### Zafa Medveskas v. Charles Karparis

[640 A.2d 543]

No. 92-157

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 28, 1994

*Patrick L. Biggam* of *Biggam, Fox & Skinner*, Montpelier, for Plaintiff-Appellant.

*Robert Halpert*, Montpelier, for Defendant-Appellee.

**Johnson, J.** Plaintiff-wife appeals from a superior court order dismissing her suit to recover on a money judgment ob-

tained by her in the Massachusetts courts against defendant-husband for child support arrearages due pursuant to a Massachusetts child custody and support decree. The issue on appeal is whether wife can recover on a Massachusetts contempt judgment based on a Massachusetts custody and support decree that modified a prior Vermont custody and support decree without a finding of substantial change of circumstances. We affirm.

The parties were divorced by an order of the Washington Superior Court in 1974. Originally, the court ordered joint custody of the three minor children, Charles, Jr., Andrew, and Zafa. During the ensuing years, the parties filed several modification petitions. As a result of one of these petitions, husband obtained physical custody of Charles, Jr. In March 1977, husband brought a petition for modification in Washington Superior Court in which he sought custody of Andrew. Wife obtained counsel and entered an appearance in this proceeding. The court declined to resolve the petition, however, until after Andrew was evaluated by Washington County Mental Health Services. In August 1977, the counselor recommended that Andrew live with husband.

Subsequently, wife moved to Massachusetts with her new husband, Andrew, and Zafa. On September 10, 1977, wife instituted an action in Massachusetts seeking custody of Andrew and Zafa. On September 15, 1977, the Massachusetts court awarded wife temporary custody of Andrew and Zafa. Husband obtained counsel and appeared in the Massachusetts custody action.

The two custody actions proceeded simultaneously, and Vermont pronounced judgment first. On November 7, 1977, the Vermont court transferred custody of Andrew from wife to husband, and ordered that husband would be relieved of paying wife support payments of $25 per month for Andrew "[w]hen [he] obtain[ed] physical custody of Andrew." Nevertheless, wife refused to relinquish custody of Andrew, and he ultimately continued to reside with wife until his emancipation. The court made no modification of support regarding Zafa, which continued at $25 per month. Zafa also resided with wife until her emancipation.

Following entry of the Vermont custody order, husband's Massachusetts counsel moved to dismiss the proceedings in

that state, arguing res judicata and comity. The Massachusetts court acknowledged that a Vermont court had given custody of Andrew to husband, but found that it was in the best interests of Andrew and Zafa to remain with wife. On June 30, 1978, the Massachusetts court granted custody of Andrew to wife and ordered husband to make support payments of $25 per child per week. The court also granted visitation rights to husband.

In 1985, wife sought a contempt order in Massachusetts seeking support arrearages for both children under the June 30, 1978 Massachusetts custody order. Husband failed to appear, and wife obtained a default contempt judgment for $18,952 on October 17, 1985. Six years later, on July 3, 1991, wife filed a complaint in the Washington Superior Court seeking enforcement of the Massachusetts default judgment and requesting interest from October 17, 1985 to July 3, 1991 in the amount of $12,887.36 and interest from the date of her complaint. It is this suit on the Massachusetts contempt judgment that is the subject of this current Vermont action.

The trial court dismissed plaintiff's suit. The court found that normally, under the Full Faith and Credit Clause of the United States Constitution,[1] the judgment that is last in time controls. In this case, however, the court ruled that the last-in-time rule should yield because: (1) wife approached the court with unclean hands in that she was in contempt of court for refusing to comply with the November 7, 1977 Vermont custody order, and (2) the Massachusetts custody order was not based on a substantial change in circumstances, and thus was unenforceable. Consequently, the court found that the subsequent contempt proceeding based on the Massachusetts order was equally unenforceable. This appeal followed.

Essentially, the parties are advancing two inconsistent and competing custody orders that differ in two ways. The Vermont order awards custody of Andrew to husband, while the Massachusetts order awards custody of Andrew to wife. The Vermont order also obligates husband to pay support payments of $25

---

[1] The Full Faith and Credit Clause provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1.

per month per child, whereas the Massachusetts order imposes that amount on a weekly basis.

■ Ordinarily, we would turn to the Parental Kidnapping Prevention Act, (PKPA), 28 U.S.C. § 1738A, to resolve this dispute. *Shute v. Shute*, 158 Vt. 242, 245, 607 A.2d 890, 893 (1992). When it was enacted in 1980, the PKPA established national standards for the enforcement and modification of child custody determinations. The PKPA prohibits a state from exercising jurisdiction in any proceeding to determine custody when the action is filed during the pendency of a custody proceeding in the courts of another state, as long as the other state is acting consistently with the PKPA. *Id.* § 1738A(g). It also prevents a second state, which would otherwise have jurisdiction over the matter, from modifying a foreign custody determination unless the original state no longer has jurisdiction or has declined to exercise its jurisdiction. *Id.* § 1738A(f). Otherwise, the PKPA requires states to enforce a foreign custody determination made consistently with the PKPA. *Id.* § 1738A(a).

If we were to apply the PKPA to this case, we could not enforce the Massachusetts custody order. Vermont was the children's home state[2] at the time of the divorce, and Vermont would have had continuing jurisdiction to modify its custody order. See *id.* § 1738A(c), (d). Therefore, Massachusetts could not have modified that order absent exigent circumstances. See *id.* Moreover, Massachusetts exercised jurisdiction while a custody determination was pending in another state that was exercising jurisdiction consistently with the PKPA, which would have violated the PKPA. See *id.* § 1738A(g). The conflicting judgments, however, were entered prior to the enactment of the PKPA. Thus, we must look to the law as it existed before the PKPA.

■ Prior to the enactment of the PKPA, courts applied general conflict-of-laws principles to determine which of two conflicting

---

[2] The PKPA defines "home State" as:

the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons.

28 U.S.C. § 1738A(b)(4).

judgments to enforce. Wife argues that the Massachusetts judgment awarding her custody of Andrew and setting the child support level for Andrew and Zafa at $25 per child per week was valid and enforceable because it was later in time than the Vermont custody order and therefore superior under the Full Faith and Credit Clause of the United States Constitution, art. IV, § 1, and 28 U.S.C. § 1738. Husband counters that the Full Faith and Credit Clause does not mandate recognition of a foreign judgment in the forum state when the forum state issued a prior, conflicting judgment binding the same parties with respect to the same subject matter. Wife responds that husband's argument is without merit because Vermont custody orders are subject to modification, and thus are not entitled to full faith and credit. Therefore, wife argues, the Massachusetts court was not required to grant full faith and credit to the prior Vermont custody order.

Before addressing the parties' arguments, it is important to define the limits of this case. As previously noted, all of the relevant judgments occurred prior to the passage of the PKPA. Moreover, Andrew and Zafa are now emancipated. This case is not about who should have custody of the children or whether they are being adequately supported. Rather, the sole issue is child support arrearages. Thus, we focus solely on the provisions for support in the Vermont and Massachusetts orders, and not on the findings or provisions regarding custody of Andrew.

■ Wife is correct that Vermont custody orders are modifiable. Vermont permits modification of a custody order if the petitioning party demonstrates a substantial change in material circumstances from the earlier decree. *Valeo v. Valeo*, 132 Vt. 526, 527, 322 A.2d 306, 308 (1974). Likewise, Massachusetts permits modification of a Massachusetts custody order or a foreign custody order upon a "showing of material change in circumstances." *Buchanan v. Buchanan*, 231 N.E.2d 570, 571 (Mass. 1967). Wife concludes that Massachusetts did not deny Vermont's order full faith and credit because it was modifiable. See *Lowery v. Lowery*, 156 Vt. 268, 271, 591 A.2d 81, 83 (1991) ("prospective [spousal] maintenance orders are not entitled to full faith and credit if they can be modified in their state of origin").

What wife's analysis overlooks is the reason a substantial change in circumstances is required before a custody order can be modified—that "[o]therwise, the doctrine of *res judicata* prevents a judgment of modification." *French v. French*, 128 Vt. 138, 139, 259 A.2d 778, 779 (1969); see also *In re Forslund*, 123 Vt. 341, 343, 189 A.2d 537, 539 (1963) (foreign child custody decree "is res adjudicata as between the parents upon facts as they existed on the date of the decree"). Thus, the Vermont custody order was res judicata on the issue of custody and support as the facts existed on November 7, 1977.

The Massachusetts court modified the Vermont decree eight months later. In the current action, the trial court found that if there were changed circumstances regarding custody of Andrew, they resulted merely from plaintiff's noncompliance with the Vermont custody order. It also found that no changed circumstances existed entitling wife to modification of the Vermont decree as to the support of Zafa.[3] Our own examination of the Massachusetts court's findings of fact reveals that there was no finding of a change in material circumstances. Moreover, we cannot infer such a change because the findings are devoid of any reference to the children's and wife's financial needs or husband's ability to pay. By refusing or failing to apply commonly accepted rules regarding modification, the Massachusetts court modified a judgment that was not subject to modification in Vermont and thereby denied the Vermont order the full faith and credit to which it was entitled.

Nevertheless, wife argues that we are required to give full faith and credit to the Massachusetts judgment under the "last-in-time" rule. That rule provides that when courts of different jurisdictions reach different results in a matter involving the same parties and the same issues, the later judgment controls. Restatement (Second) of Conflict of Laws § 114 (1971). The rationale for permitting the later judgment to control is that the winner of the first judgment had the opportunity to

[3] Wife argues that we can only speculate on the basis for the Massachusetts decision because we do not have a transcript of that proceeding before us. Wife, however, submitted a copy of the Massachusetts custody order and underlying findings of fact to the Vermont courts. Thus, we are not speculating on the basis of the Massachusetts court's decision.

litigate the defense of res judicata in the second forum and an appellate avenue for correction if the defense was erroneously rejected. Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-In-Time Rule for Conflicting Judgments*, 82 Harv. L. Rev. 798, 798 (1969). According to the Restatement comments, the rule applies even when the later judgment denied full faith and credit to the first judgment. Restatement (Second) of Conflict of Laws § 114 comment a. The Restatement notes, however, that if the second forum (F-2) denies full faith and credit to the first forum (F-1), the losing party appeals, and the United States Supreme Court denies certiorari, it may be inappropriate to give full faith and credit to F-2's judgment, even though it is last in time. *Id.* § 114 comment b.

■ The United States Supreme Court has recognized the last-in-time rule under the Full Faith and Credit Clause. See, e.g., *Sutton v. Leib*, 342 U.S. 402, 408 (1952); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 76–78 (1939); *Dimock v. Revere Copper Co.*, 117 U.S. 559, 566 (1886). But the Court has never addressed the applicability of the last-in-time rule where F-1's order was raised and denied full faith and credit in F-2 and the prevailing party in the F-2 action seeks to enforce that inconsistent judgment in F-1. State courts faced with this scenario have divided over whether the rule applies. Those that followed the last-in-time rule and enforced F-2's order reasoned that the parties had the opportunity to litigate full faith and credit in F-2 and that denial of full faith and credit to F-2's judgment would exhibit the very "parochial attitude" the Full Faith and Credit Clause is designed to override. See, e.g., *Sullivan v. Sullivan*, 424 N.E.2d 957, 960–61 (Ill. App. Ct. 1981); *DiRusso v. DiRusso*, 287 N.Y.S.2d 171, 178–81 (Sup. Ct. 1968).

Courts that have rejected the last-in-time rule in the present scenario reason that to afford full faith and credit to a foreign judgment that is inconsistent with a valid binding order issued in their own jurisdictions would require them to give "greater faith and credit to the judgments of the courts of other states" than to their own judgments. *Hammell v. Britton*, 119 P.2d 333, 339 (Cal. 1941); accord *Pruitt v. Key*, 203 So. 2d 450, 453 (Ala. 1967); *Porter v. Porter*, 416 P.2d 564, 568 (Ariz. 1966), *cert. denied*, 386 U.S. 957 (1967); *Colby v. Colby*, 369 P.2d 1019, 1023 (Nev.), *cert. denied*, 371 U.S. 888 (1962).

██ ██ We agree that the Full Faith and Credit Clause does not compel us to give greater effect to the Massachusetts judgment than to our own previous state judgment. The Full Faith and Credit Clause nationalizes state judgments and thereby discourages jurisdictional competition between the states. We are not persuaded that giving full faith and credit to a judgment that denies full faith and credit will advance the purpose of that Clause. And though it is not controlling, the PKPA is instructive. Under that statute, if a state court is required to enforce one of two inconsistent custody determinations, the PKPA would require the court to enforce the order made consistently with the PKPA, no matter which of the two orders issues last in time. See generally 28 U.S.C. § 1738A. Thus, the PKPA rejects the last-in-time rule, at least in the realm of child custody determinations. Accordingly, we decline to give effect to the Massachusetts custody and support order by enforcing a contempt and arrearage order in aid of that judgment.

Wife argues in the alternative that even if the Massachusetts order granting her custody of Andrew was defective, that portion of the order that awarded custody and support for Zafa should be upheld and enforced. This argument is without merit because the Massachusetts order denied full faith and credit to the Vermont order as it related to support of both Andrew and Zafa.

Today's decision does not prohibit wife from now seeking to enforce the November 7, 1977 Vermont order, nor husband from raising any and all defenses permitted by law.

*Affirmed.*