1997–NMCA–016

934 P.2d 1066

**Cynthia THOMA, Petitioner–Appellant,**

**v.**

**Joseph E. THOMA, Sr., Respondent–Appellee.**

**No. 15930.**

Court of Appeals of New Mexico.

Dec. 24, 1996.

Certiorari Denied Feb. 19, 1997.

Paul S. Wainwright, Paul S. Wainwright, P.A., Albuquerque, for Petitioner–Appellant.

William A. L'Esperance, Albuquerque, for Respondent–Appellee.

## OPINION

WECHSLER, Judge.

1. This case illustrates the tension between the rule allowing collateral attack on a judgment entered without jurisdiction and the rule requiring that matters litigated to conclusion are entitled to be considered finally settled between the parties. Wife appeals from the district court's order determining that an Oklahoma divorce decree and subsequent judgments were void for lack of personal jurisdiction. As a result of that determination, the district court denied filing under the New Mexico Foreign Judgments Act (NMFJA), NMSA 1978, §§ 39–4A–1 to –6 (Repl.Pamp.1991 & Cum.Supp.1996). We reverse and remand because we reject Husband's arguments that: (1) he was entitled in the proceedings below to show that Oklahoma did not have personal jurisdiction over him; and (2) New Mexico did not have to give full faith and credit to the Oklahoma judgment Wife was seeking to file because Oklahoma did not give full faith and credit to an earlier New Mexico judgment. In addition, as this Court will affirm if the trial court reaches the correct result for any reason, see Elder v. Park, 104 N.M. 163, 165, 717 P.2d 1132, 1134 (Ct.App.1986), we also discuss several other grounds that were either raised below or that arguably may be raised by this Court for the first time on appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

2. Husband and Wife were married in Oklahoma in 1979. They lived together in New Mexico until February 3, 1982, when Wife left Husband and moved from New Mexico, taking their minor daughter with her. Husband remained in New Mexico.

### I. New Mexico Proceedings

3. On the day after Wife left, Husband filed for divorce in New Mexico, serving Wife by publication. On July 28, 1982, the Bernalillo County District Court granted Husband a final decree of divorce. The decree stated both that custody would be determined when the child was located and that Husband was granted custody of the child; child support was not addressed. On January 7, 1983, Wife petitioned the Bernalillo County court to set aside this decree, contending that service by publication was improper because Husband had known her whereabouts and because a divorce action brought by Wife was then pending before an Oklahoma court which had jurisdiction over all parties including the minor child. The court denied Wife's petition and entered an amended final decree

of divorce on March 10, 1983, stating that Wife did not appear but had been duly notified and served through a previous attorney and by publication. The amended final decree stated that Husband was granted custody of the child, but did not address the issue of child support.

## II. Oklahoma Proceedings

4. On August 4, 1982, Wife filed for divorce in Oklahoma. Husband, represented by counsel, made a special appearance, contesting the Oklahoma court's jurisdiction over him and stating that a New Mexico court had already granted a divorce. The Oklahoma County District Court overruled Husband's special appearance and Husband did not participate further in the proceeding. On May 27, 1983, the court entered a default judgment granting Wife a divorce and custody of the child, and ordering Husband to pay $250 per month in child support beginning June 1, 1983.

5. Husband failed to pay child support as ordered, and in 1991 Wife filed an application for contempt in the Oklahoma court. Husband again made a special appearance, this time pro se, to contest the Oklahoma court's jurisdiction. On December 11, 1991, the Oklahoma court entered a judgment awarding Wife $25,200 plus interest at 11.73% per annum, representing child support arrears.

## III. Petition To File Oklahoma Judgment in New Mexico

6. On August 4, 1993, Wife petitioned to file the December 11, 1991 Oklahoma judgment in Bernalillo County District Court under the NMFJA. The court consolidated the case with the 1982–1983 New Mexico divorce cause, upheld the New Mexico divorce, and denied Wife's petition to enforce the 1991 Oklahoma judgment. Wife appealed.

## DISCUSSION

7. The NMFJA is based upon the Uniform Enforcement of Foreign Judgments Act (UEFJA) §§ 1–10, 13 U.L.A. 149–80 (1986 & Cum.Supp.1996). *Conglis v. Radcliffe,* 119 N.M. 287, 289, 889 P.2d 1209, 1211 (1995). The purpose of the UEFJA is to provide a speedy and economical means of satisfying the constitutional obligation to give full faith and credit to sister state judgments. UEFJA, 13 U.L.A. 150 prefatory note (1986); *see Conglis,* 119 N.M. at 289, 889 P.2d at 1211.

8. Production of an authenticated copy of a foreign judgment constitutes a prima facie case for enforcement under the UEFJA. *Oyakawa v. Gillett,* 175 Ariz. 226, 228, 854 P.2d 1212, 1215 (1993); *Minuteman Press Int'l, Inc. v. Sparks,* 782 S.W.2d 339, 340 (Tex.Ct.App.1989). The burden then shifts to the defendant to prove any defense to enforcement. *Minuteman Press Int'l, Inc.,* 782 S.W.2d at 340–41; *see Worthington v. Miller,* 11 Kan.App.2d 396, 727 P.2d 928, 932 (1986) (burden of challenging jurisdiction rests heavily on defendant). Potential defenses are lack of personal or subject matter jurisdiction, fraud in procuring the judgment, lack of due process, or other grounds making the judgment invalid or unenforceable. *Conglis,* 119 N.M. at 289, 889 P.2d at 1211; *Rubin v. Rubin,* 120 N.M. 592, 594, 904 P.2d 41, 43 (Ct.App.1995); *Jordan v. Hall,* 115 N.M. 775, 778, 858 P.2d 863, 866 (Ct.App. 1993).

## I. Personal Jurisdiction over Husband in Oklahoma

9. In the case on appeal, the New Mexico district court determined that the Oklahoma court never obtained personal jurisdiction over Husband, a New Mexico resident. Oklahoma law would apply for this determination. *See Electro–Measure, Inc. v. Ewald Enters., Inc.,* 398 N.W.2d 85, 88 (Minn.Ct.App.1986), *review denied* (Mar. 13, 1987); *China Express, Inc. v. Volpi & Son Mach. Corp.,* 126 A.D.2d 239, 513 N.Y.S.2d 388, 389 (1987); *Data Management Sys., Inc. v. EDP Corp.,* 709 P.2d 377, 380 (Utah 1985) (per curiam). The New Mexico court found that Husband had never consented to jurisdiction in Oklahoma. Based on testimony from Husband and Wife, the court also found that the parties had never lived together as husband and wife in Oklahoma and apparently concluded that Oklahoma lacked personal jurisdiction over Husband under the Oklahoma long arm statute applicable to domestic relations proceedings. *See* Okla.Stat.Ann.

tit. 12, § 1272.2 (West 1988). The record does not show and the parties do not argue that the parties lived in a parental relationship in Oklahoma, which would also provide jurisdiction under Section 1272.2. If the Oklahoma court lacked personal jurisdiction, its order requiring Husband to pay child support would be void. *See Taylor v. Taylor*, 709 P.2d 707, 709 (Okla.Ct.App.1985).

10. The question before this Court is whether the doctrine of issue preclusion and the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, permit Husband to collaterally attack the Oklahoma judgment in New Mexico for lack of personal jurisdiction. The answer to this question involves Husband's special appearances in the Oklahoma proceedings. If Husband had never appeared, he could raise lack of personal jurisdiction in Oklahoma as a defense to Wife's enforcement action in New Mexico. *See Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 517–18, 75 L.Ed. 1244 (1931); *Conglis*, 119 N.M. at 289, 889 P.2d at 1211. Husband made a special appearance in Oklahoma, however, in 1982 to argue that the court lacked personal jurisdiction over him and the Oklahoma court determined that it had jurisdiction.

11. Under the doctrine of issue preclusion (collateral estoppel), relitigation of personal jurisdiction over Husband would be precluded in Oklahoma if this issue was actually and necessarily determined by the Oklahoma court. *See Fent v. Oklahoma Natural Gas Co.*, 898 P.2d 126, 133 (Okla.1994); *Swan v. Sargent Indus.*, 620 P.2d 473, 474 (Okla.Ct. App.), *cert. denied* (Nov. 7, 1980). By making a special appearance, Husband submitted to the Oklahoma court's jurisdiction for the limited purpose of determining jurisdiction and is bound by that court's determination. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982); *Baldwin*, 283 U.S. at 525–26, 51 S.Ct. at 517–18; *Swan*, 620 P.2d at 474–77. Of course, the issue sought to be precluded would have had to have been litigated in prior proceedings that provided the opportunity for full and fair litigation, *see First Nat'l Bank & Trust Co. v. Lawing*, 731 F.2d 680, 684 (10th Cir.1984); *see also Baldwin*, 283 U.S. at 525–26, 51 S.Ct. at 517–18, but Husband does not contend that anything prevented him from so litigating the question of personal jurisdiction in Oklahoma. The result is that Husband would be precluded under Oklahoma law from relitigating the issue of personal jurisdiction.

■ 12. Under the Full Faith and Credit Clause, relitigation is therefore also precluded in New Mexico. The Full Faith and Credit Clause requires each state to give the final judgment of a sister state "at least the *res judicata* effect which the judgment would be accorded in the State which rendered it." *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin*, 283 U.S. at 525, 51 S.Ct. at 518.

13. The New Mexico district court erred, therefore, in making its own determination of whether the Oklahoma court had personal jurisdiction over Husband. Once the New Mexico court discovered that the Oklahoma court had made a determination, after full and fair litigation, the Oklahoma court's determination was entitled to full faith and credit even if it was erroneous. *See Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706, 714–15, 102 S.Ct. 1357, 1370–71, 71 L.Ed.2d 558 (1982); Restatement (Second) of Conflict of Laws § 106 (1971); William L. Reynolds, *The Iron Law of Full Faith and Credit*, 53 Md.L.Rev. 412, 424–25 (1994). An erroneous finding of personal jurisdiction after a special appearance could only have been corrected by appeal or other direct challenge in Oklahoma. *See Baldwin*, 283 U.S. at 525, 51 S.Ct. at 517–18; *Swan*, 620 P.2d at 475; Reynolds, *supra*, at 425. Since Husband failed to appeal in Oklahoma, the New Mexico district court erred in denying full faith and credit on the ground that the Oklahoma court lacked personal jurisdiction over Husband.

## II. Inconsistent Judgments in Oklahoma and New Mexico

14. Husband contends that the Oklahoma judgment is unenforceable because of the existence of "prior jurisdiction" and an earlier decree in New Mexico. Husband also made this argument at trial, but the findings and conclusions below do not show that the New Mexico district court accepted this defense.

15. As Husband recognizes, when different states render inconsistent judgments, the general rule is that the judgment entered last is entitled to full faith and credit. *See Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78, 60 S.Ct. 44, 50–51, 84 L.Ed. 85 (1939); *Gilmore v. Gilmore*, 106 N.M. 788, 790, 750 P.2d 1114, 1116 (Ct.App.), *cert. denied*, 107 N.M. 16, 751 P.2d 700 (1988); Restatement of Conflict of Laws, *supra*, § 114. The "last in time" rule follows from the principle of claim preclusion (res judicata). Ruth B. Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments*, 82 Harv. L.Rev. 798, 798–99 (1969). If the party prevailing in the first action fails to raise claim preclusion in the second action, that party has waived the defense. *See Gilmore*, 106 N.M. at 791, 750 P.2d at 1117; Restatement (Second) of Judgments § 15 cmt. b (1982).

16. In the case on appeal, however, the record shows that Husband apparently invoked claim preclusion by informing the Oklahoma court, in both his 1982 and 1991 special appearances in Oklahoma, of the prior New Mexico proceeding. Even if the Oklahoma court erroneously failed to give full faith and credit to the New Mexico decree, the "last in time" rule still applies. *See Treinies*, 308 U.S. at 77 & n. 21, 60 S.Ct. at 50 n. 21; Reynolds, *supra*, at 416. Oklahoma's judgment may be based on an error of law, but, like other erroneous judgments, it must be challenged by appeal in the courts of Oklahoma and not by collateral attack in New Mexico. *See Treinies*, 308 U.S. at 77–78; Restatement of Conflict of Laws, *supra*, §§ 106, 114 cmt. b. Since Husband failed to appeal in Oklahoma, the Oklahoma judgment is entitled to full faith and credit under the "last in time" rule.

17. Husband argues that there is an exception to the "last in time" rule. The rule requires a forum in a third state (F–3) to give full faith and credit to a later judgment of a second state (F–2) rather than to an earlier inconsistent judgment of a first state (F–1). Reynolds, *supra*, at 416. Husband argues, however, that this rule does not apply when F–3 is also F–1, as in this case.

18. Some state courts have endorsed such an exception to the "last in time" rule, reasoning that otherwise they would be giving " 'greater faith and credit to the judgments of the courts of other states' than to their own judgments." *Medveskas v. Karparis*, 161 Vt. 387, 640 A.2d 543, 546 (1994) (quoting *Hammell v. Britton*, 19 Cal.2d 72, 119 P.2d 333, 339 (1941) (en banc)); *see also Porter v. Porter*, 101 Ariz. 131, 135, 416 P.2d 564, 568 (1966) (en banc), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1028, 18 L.Ed.2d 107 (1967). We are not persuaded by this reasoning. Full faith and credit requires F–1 in this situation to treat the later F–2 judgment as if it were a judgment of F–1; under the principle of claim preclusion, the later judgment is then entitled to enforcement. *See Sullivan v. Sullivan*, 98 Ill.App.3d 928, 54 Ill.Dec. 207, 210–11, 424 N.E.2d 957, 960–61 (1981); *DiRusso v. DiRusso*, 55 Misc.2d 839, 287 N.Y.S.2d 171, 178–81 (Sup.Ct.1968); Ginsburg, *supra*, at 812; Reynolds, *supra*, at 417.

19. The Supreme Court has clearly stated, although in dictum, that even when F–1 is also F–3, that state is required to give full faith and credit to a later, inconsistent F–2 judgment. *See Sutton v. Leib*, 342 U.S. 402, 408, 72 S.Ct. 398, 402–03, 96 L.Ed. 448 (1952) (dictum) (New York decree invalidating Nevada divorce is entitled to full faith and credit in Nevada); Ginsburg, *supra*, at 810–11. The Full Faith and Credit Clause was intended to reduce the uncertainty, confusion, and delay that result from relitigation of the same issue when different states exercise their power over the same case or controversy, and to transform "an aggregation of independent, sovereign States into a nation." *Sherrer v. Sherrer*, 334 U.S. 343, 355, 68 S.Ct. 1087, 1092–93, 92 L.Ed. 1429 (1948); *Underwriters Nat'l Assurance Co.*, 455 U.S. at 704, 102 S.Ct. at 1365–66. Cases like

---

*Medveskas* exemplify the parochial attitude that the Full Faith and Credit Clause was intended to override. *See DiRusso,* 287 N.Y.S.2d at 180; *Sullivan,* 54 Ill.Dec. at 210–11, 424 N.E.2d at 960–61; Reynolds, *supra,* at 417.

20. We have previously honored our constitutional obligation to give full faith and credit to a sister state's later, inconsistent judgment. In *Gilmore,* we gave full faith and credit to a later, inconsistent Alabama judgment when the earlier New Mexico judgment was apparently not brought to the attention of the Alabama court. 106 N.M. at 790–91, 750 P.2d at 1116–17. In this case, we hold that the "last in time" rule requires New Mexico (F–1 and F–3) to give full faith and credit to the later judgment of Oklahoma (F–2), even if Oklahoma may have failed to properly recognize the earlier New Mexico judgment that was called to the attention of the Oklahoma court.

21. Husband relies on *Murphy v. Murphy,* 96 N.M. 401, 405–06, 631 P.2d 307, 311–12 (1981), for the proposition that the New Mexico court was not required to give full faith and credit to the Oklahoma decree. It is true that *Murphy* so held under the peculiar facts of that case. However, the only material similarity between *Murphy* and this case is that there were inconsistent judgments arising out of both New Mexico and Oklahoma. There are also differences between *Murphy* and this case that make *Murphy* inapplicable. First, the husband in *Murphy* was warned that certain actions would amount to a consent to the New Mexico court's jurisdiction, and he thereafter took those actions. Second, the *Murphy* case was procedurally complicated by a host of facts involving stipulations, incomplete litigation, and changes in orders that are not present in this case. Finally, there was a basis for continuing jurisdiction present in *Murphy,* which is not present as far as the arrears are concerned in this case. Thus, *Murphy* does not compel an affirmance here.

## III. Other Grounds for Affirmance

### A. Subject matter jurisdiction under Oklahoma residency requirement

22. Husband asserted at trial that the Oklahoma court lacked subject matter jurisdiction because Wife had not met Oklahoma's residency requirement for divorce. A judgment from a court lacking subject matter jurisdiction is not properly rendered and is not entitled to full faith and credit. *Underwriters Nat'l Assurance Co.,* 455 U.S. at 704, 102 S.Ct. at 1365–66; Restatement of Conflict of Laws, *supra,* § 105.

23. Oklahoma law required Wife to have been an "actual resident" of the state for the six months preceding filing for divorce, Okla.Stat.Ann. tit. 12, § 1272 (West 1988), and, to support venue in Oklahoma County, to have been a "resident" of that county for the thirty days preceding filing, Okla.Stat.Ann. tit. 12, § 1272.1 (West 1988). Husband's special appearance motion, filed in the Oklahoma court in August 1982, read as follows:

### SPECIAL APPEARANCE MOTION TO QUASH AND PLEA TO JURISDICTION AND PLEA TO VENUE

COMES NOW the Defendant, JOSEPH E. THOMA, SR., and appearing specially and for this purpose only, moves the Court to vacate, set aside and hold for naught the summons and purported service thereof for the reason that the same was not issued, served or returned according to law and for the further reason this Court has no jurisdiction over the person of this Defendant of this cause and that venue of this cause is not properly in this county. Defendant further states that the parties were divorced on July 28, 1982 in Bernalillo County, New Mexico.

The record merely shows that the Oklahoma district court overruled Husband's special appearance; we do not have findings and conclusions or a transcript of the proceedings in the Oklahoma court. The Oklahoma court must have determined that the summons and service were proper, that it had personal jurisdiction over Husband, and that venue was proper in the county under Section 1272.1, since these issues were specifically raised by Husband's motion. In the absence

of a more complete record, however, we cannot conclude that the Oklahoma court necessarily determined that Wife was an actual resident of Oklahoma for the six months preceding filing for divorce, as required by Section 1272.

24. The doctrine of issue preclusion generally applies to prohibit relitigation in the forum state of subject matter jurisdiction as well as personal jurisdiction, provided that relitigation would be precluded under the law of the sister state that rendered the judgment. *See Sherrer,* 334 U.S. at 348–50, 68 S.Ct. at 1089–90 (residency requirement for Florida divorce); *Underwriters Nat'l Assurance Co.,* 455 U.S. at 706–07, 102 S.Ct. at 1366–67; *Durfee,* 375 U.S. at 111, 84 S.Ct. at 244–45; *cf. Fent,* 898 P.2d at 133; *Swan,* 620 P.2d at 477; *Ortiz v. Suazo,* 91 N.M. 45, 49, 570 P.2d 309, 313 (1977). *See generally* Reynolds, *supra,* at 424–30 (noting exceptions). If Wife had shown in the NMFJA proceeding that the Oklahoma court determined Wife met the six month residency requirement, relitigation in New Mexico would have been precluded. *See Fent,* 898 P.2d at 133; *Carris v. John R. Thomas & Assocs., P.C.,* 896 P.2d 522, 528 (Okla.1995) (burden on party relying on issue preclusion). Since she did not make this showing, Husband's collateral attack in New Mexico was permissible.

25. A successful collateral attack, however, required Husband to carry the burden of proving that Wife did not meet Oklahoma's six month residency requirement, which he failed to do. *See Minuteman Press Int'l, Inc.,* 782 S.W.2d at 340–41 (burden on party attacking judgment under UEFJA). In the NMFJA proceeding, Husband testified that he did not know where Wife had lived during the relevant period. Wife testified that, after she left Husband on February 4, 1982, she had first gone to her parents' house in Oklahoma and then visited a friend in Texas for two or three weeks before returning to Oklahoma. Husband requested a finding that Wife had lived in Texas for part of the six month period and that Oklahoma therefore lacked jurisdiction. The New Mexico district court refused to make this finding, which refusal is regarded as a finding against Husband. *See Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988).

26. In addition, we question whether the testimony would support Husband's requested finding. Oklahoma has interpreted the "actual resident" requirement in Section 1272 as being substantially equivalent to a requirement of domicile and has stated that the controlling factor is the party's intention. *See Bixby v. Bixby,* 361 P.2d 1075, 1077–78 (Okla.1961); *see also Park v. Park,* 610 P.2d 826, 827 (Okla.Ct.App.1980) (controlling factor in determining domicile is intention). Wife's brief presence in Texas would not necessarily defeat her establishing an Oklahoma domicile. *See Clark v. Clark,* 361 P.2d 207, 210–11 (Okla.1961). Without further evidence on Wife's intention and on the significance of her presence in Texas, Husband failed to provide sufficient evidence to prove Wife did not satisfy Oklahoma's six month residency requirement. We conclude that Husband did not carry his burden of proving that the Oklahoma court lacked subject matter jurisdiction on this ground.

**B. Fraud**

27. Husband argued at trial that Wife committed fraud in obtaining the Oklahoma divorce decree despite the earlier New Mexico proceeding. The findings and conclusions below do not show that the New Mexico district court accepted this defense. Only extrinsic fraud, or fraud in the procurement of the Oklahoma judgment, would be a defense to enforcement under the NMFJA. *See Conglis,* 119 N.M. at 289, 889 P.2d at 1211; Reynolds, *supra,* at 422–23. Extrinsic fraud is fraud that could not have been ruled on by the court rendering the judgment. Reynolds, *supra,* at 422–23. In his 1982 special appearance, Husband informed the Oklahoma court of the prior New Mexico proceeding; therefore, there could be no extrinsic fraud even if Wife's action otherwise constituted fraud. *Cf. McGee v. Rodriquez,* 106 N.M. 65, 68, 738 P.2d 937, 940 (Ct.App. 1987) (holding Texas judgment could not be collaterally attacked in New Mexico on issue of fraud raised and determined in Texas). We conclude that Husband did not satisfy his burden of proving fraud as a defense to

enforcement of the Oklahoma judgment. *See Minuteman Press Int'l, Inc.,* 782 S.W.2d at 340–41; *Worthington,* 727 P.2d at 932.

## C. UCCJA, PKPA, and FFCCSOA

28. Both New Mexico and Oklahoma had adopted versions of the Uniform Child Custody Act (UCCJA) §§ 1–28, 9 U.L.A. 123 (1988), by 1982. *See* NMSA 1978, §§ 40–10–1 to –24 (Cum.Supp.1982) (effective July 1, 1981); Okla.Stat.Ann. tit. 10, §§ 1601–1628 (West 1987) (effective Oct. 1, 1980). The Parental Kidnapping Prevention Act (PKPA) was also in effect. *See* 28 U.S.C. § 1738A (1994) (effective 1980). The Full Faith and Credit for Child Support Orders Act (FFCCSOA) is also potentially applicable to the case on appeal. *See* 28 U.S.C. § 1738B (Cum.Supp.1996); *Marino v. Lurie,* 33 Cal.App.4th 658, 39 Cal.Rptr.2d 835, 844 (1995) (FFCCSOA took effect upon signature by President in 1994 and applies even to case then pending on appeal). Although neither party raised the UCCJA, PKPA, or FFCCSOA, we consider these acts because they govern subject matter jurisdiction and full faith and credit for custody and support orders. *Cf. State ex rel. Dep't of Human Servs. v. Avinger,* 104 N.M. 255, 256–57, 720 P.2d 290, 291–92 (1986) (appellate courts raised PKPA on own motion); *State v. Ramirez,* 89 N.M. 635, 642, 556 P.2d 43, 50 (Ct.App.1976) (appellate court can raise jurisdictional question sua sponte), *overruled on other grounds by Sells v. State,* 98 N.M. 786, 788, 653 P.2d 162, 164 (1982).

29. If it were clear from the record before us that the Oklahoma judgment was rendered in the absence of subject matter jurisdiction under the UCCJA or was not entitled to full faith and credit under the PKPA or FFCCSOA, affirmance might be proper because the New Mexico district court had reached the correct result, even though for the wrong reason. *See Elder,* 104 N.M. at 165, 717 P.2d at 1134. These questions of jurisdiction and full faith and credit, however, are mixed questions of law and fact, requiring an evidentiary record for resolution on appeal. *See Meier v. Davignon,* 105 N.M. 567, 570, 734 P.2d 807, 810 (Ct.App.1987) (jurisdiction under UCCJA is mixed ques-

tion). As the party with the burden of proof, Husband would have had to present sufficient evidence to allow a determination on these questions. *See* Okla.Stat.Ann. tit. 10, §§ 1604(5), 1605 ("home state" jurisdiction after six months); *cf. Otero v. Buslee,* 695 F.2d 1244, 1248–49 (10th Cir.1982) (defendant has burden of proof on affirmative defense under New Mexico law, even if assertion of a negative is required).

30. Husband failed to do so. In the record before us, we do not have sufficient information about the Oklahoma proceedings. In addition, because Husband did not raise the issue below, Wife did not have the opportunity to present evidence to counter any potential argument based on the UCCJA, PKPA, or FFCCSOA. We will not affirm on a fact-dependent ground not relied on by the district court, because an appellate court may not engage in fact-finding and because the appellant did not have the opportunity to present relevant evidence. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). Our review of the UCCJA, PKPA, and FFCCSOA, therefore, does not alter our conclusion that we must reverse.

31. In addition, there are indications in the record that Husband may have raised the issue of jurisdiction under the UCCJA in the Oklahoma court. There is authority for applying the general principle of issue preclusion to determinations of subject matter jurisdiction under the UCCJA. *See Lofts v. Superior Court,* 140 Ariz. 407, 411–12, 682 P.2d 412, 416–17 (1984) (en banc); 1 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 13.5, at 785 (2d ed. 1987). If Husband had raised subject matter jurisdiction under the UCCJA in the NMFJA proceeding, it is possible that Wife could show that this issue was determined in Oklahoma and could then argue that relitigation was precluded in New Mexico. Under the rationale of *Franks,* it would be unfair for us to affirm on this ground because Husband's failure to raise it in the New Mexico district court deprived Wife of the incentive and opportunity to present evidence on it. *See Franks,* 119 N.M. at 177, 889 P.2d at 212.

## CONCLUSION

32. We hold that the Oklahoma divorce decree and subsequent judgments are entitled to full faith and credit in New Mexico and that Husband did not carry his burden of proving a defense to enforcement of the 1991 Oklahoma judgment for child support arrears. We therefore reverse and remand with instructions to give full faith and credit to the Oklahoma judgment and to allow enforcement of this judgment under the NMFJA. Wife is awarded her costs on appeal. We deny her request for attorney fees.

33. **IT IS SO ORDERED.**

PICKARD and BOSSON, JJ., concur.